(43 App. Div. 342.)

PEOPLE ex rel. DRAKE v. KNAUBER et al.

(Supreme Court, Appellate Division, Fourth Department. October 13, 1899.)

1. MUNICIPAL CIVIL SERVICE LAWS—EXAMINATION—RIGHT TO CERTIFICATE.
  The civil service board of Syracuse, having examined a candidate for office prior to July 1, 1898, as to merit, and having, subsequent to October 11, 1898, placed his name on the eligible list, with a rating double that given him for merit alone, may be compelled by mandamus to certify to the appointing officers that he is qualified by merit and fitness to be placed on the eligible list, in view of rule 15 of the city, passed October 11, 1898, providing that all lists existing prior to July 1, 1898, prepared for examination for merit only, shall be continued in force, and may be certified to the person having the appointing power, and that the rating for merit and fitness shall be obtained by doubling the rating for merit.

2. SAME—POWER OF BOARD.
  A civil service board has no power to certify to the person authorized by the constitution to make appointments that a candidate for office is entitled to be appointed to the office.

Appeal from trial term, Onondaga county.

Application for mandamus, on the relation of Edward Drake, against Jacob C. Knauber and others, constituting the civil service board of the city of Syracuse. From a judgment for respondents (57 N. Y. Supp. 617), relator appeals. Reversed.

On the 23d day of February, 1899, pursuant to an order of the special term of the supreme court, granted upon the application of the appellant herein, the county clerk of Onondaga county issued a writ of alternative mandamus, directing the respondents, who constitute the civil service board of the city of Syracuse, to make and cause to be delivered to the common council of that city their certificate that Edward Drake, the relator and appellant, had passed an examination for merit and fitness for the position of custodian of the city hall, pursuant to the provisions of the civil service act; that his rating upon the eligible list for that .position was the highest of the veterans who had passed an examination, and that under the civil service rules of the city he was entitled to be appointed to the position for which he was examined. The writ also contained the usual clause directing the defendants, in the event

that its requirements were not obeyed, to show cause for their refusal, and to make a return of the writ pursuant to section 2072 of the Code of Civil Procedure. The respondents refused to make and deliver the certificate required by the writ, and on the 18th day of March, 1899, made and filed a return to the same, setting forth the grounds of their refusal. The issues thus joined came on for trial at the Onondaga trial term in April, 1899, and at the close of the relator's evidence the writ was quashed, and the proceedings were dismissed, with costs. Judgment was thereupon duly entered, and from such judgment this appeal is brought.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and SMITH, JJ.

William G. Tracy, for appellant.
James E. Newell, for respondents.

ADAMS, J. The office of "custodian of the city hall," a creation of the charter of the city of Syracuse, is one which is filled by appointment by the common council of that city, the term thereof being one year. It is conceded that the office is within the purview of the civil service laws of the state, and that applicants for appointment thereto are subject to competitive examination. On or about February 14, 1898, the office became vacant by reason of the death of the then incumbent, whereupon the common council of the city adopted a resolution requesting the civil service board to certify to it the names of persons eligible for appointment to that office, which resolution and request were duly communicated to such board. Subsequently, and on the 28th day of February, 1898, the board held an examination of the applicants for appointment to that office, and shortly thereafter, as a result of such examination, certified to the common council the names of four persons, with their respective ratings, as follows, viz.: Edward J. Arbogast, 49.40; George W. Herrick, 46.63; Edward Drake (the relator), 49.35; James H. Barry, 47.25. Of these persons all but the first named were veterans of the late Civil War, who had been honorably discharged from the military service of the United States, which fact was duly certified to the common council, as was the further fact that the rating of the persons named was for merit only. This certification was made in accordance with the rules and regulations for admission to the civil service of the city of Syracuse, then in force, and which had been approved by the civil service commission of the state. On the 31st day of March, 1898, the legislature of the state amended section 8 of the civil service law by directing, among other things, that the mayors of cities should prescribe regulations for the civil service of their respective cities, and declaring that all acts inconsistent therewith were repealed. Laws 1898, c. 186. Thereafter, and on the 11th day of October, 1898, in compliance with the requirements of this act, a new set of civil service rules or regulations for the city of Syracuse was promulgated, among which was the following, viz.:

"Rule XV. All eligible lists whether prepared after examinations for both merit and fitness, or for merit only, existing prior to July 1st, 1898, for appointment or promotion in the civil service of the city of Syracuse, shall be continued in full force and effect, except as otherwise provided in regulation XIII, and may be certified to the person or persons holding the power of appointment or promotion; provided, however, that the ratings given after

examination for merit only, shall be multiplied by two, and the result of such multiplication shall be the rating for merit and fitness as determined in regulation VIII."

After the adoption of these rules, and on the 2d day of November, 1898, the respondents adopted the following resolution, viz.:

"Resolved, that the clerk be directed to enter upon the eligible list the names of candidates who have taken an examination for merit only, after multiplying their rating by two in accordance with the decision of the state civil service board."

The relator, Drake, was thereupon placed upon the eligible list with the rating of 98.70, and was duly notified of the fact by the examiners. The relator has since duly demanded a separate examination for fitness, but the examiners have persistently refused to thus certify him to the common council, and Edward J. Arbogast, who was given the appointment temporarily, has continued to fill the same down to the present time.

Upon the foregoing facts it remains to be determined whether the refusal of the defendants to accede to the relator's request, or to certify him as eligible, can be justified. The principle that appointments in the civil service shall be made solely with reference to merit and fitness, to be ascertained by competitive examination, is one which first found expression in legislative enactment (Laws 1883, c. 354), but subsequently became incorporated into the fundamental law of the state (State Const. art. 5, § 9). As regards the policy of the law thus formulated, it is perhaps unnecessary for this court to express any opinion further than to say that it was unquestionably the outgrowth of a public sentiment, which had been created by the almost universal practice of appointing persons to office mainly upon political and partisan grounds, and without the slightest reference to their competency or merit. In these circumstances it is not surprising to find that obstacles to the enforcement of such a law are frequently interposed, and that the inventive genius of its opponents is often sorely taxed to find some plausible pretext for its evasion, if not its absolute nullification. The present case apparently furnishes an illustration in point. The examination of the relator in February, 1898, was in fact just as much an examination for both "fitness" and "merit" as though there had been two separate examinations, and it was obviously so regarded by the examiners. In saying this it is not necessary to assert that the terms "merit" and "fitness" are synonymous. Indeed, it is by no means impossible to conceive of cases where they would not and could not be so considered. For instance, the relator, by reason of his faithful service in the army, and his good citizenship since his discharge therefrom, can very properly be said to merit any appointment in the civil service for which he is fitted; but if he were blind, or deaf, or dumb, he doubtless would, in a certain sense, be unfit for the particular position which he seeks. It does not appear, however, that the relator was subject to any physical or moral infirmities whatsoever. On the contrary, the record discloses that upon his examination it appeared that he was sound in mind and body; that he was industrious and temperate in his habits; and that he was of good moral char-

acter, and in all respects "fit" for the position to which he aspired. It is true that the certificate which followed the examination stated that the relator's rating was for merit only, but the examiners, as was their custom, doubled his rating, so as to comply with existing rules, and, although this method of procedure is by no means one which is to be commended, it is nevertheless the one which was then in vogue, and it would be unjust to the defendants to assume that they would unite in a certificate which was understood to include fitness as well as merit unless they were satisfied that the applicant was in all respects fairly equipped to perform the duties of the office for which he had been examined; and especially would this be so where, as in this case, such examination embraced the mental, moral, physical, and practical qualifications of the applicant.

The article of the constitution to which reference has already been made (article 5, § 9) provides that "laws shall be made to provide for the enforcement of this section." But it is obvious that the power thus reserved to legislative bodies, whether state or municipal, must be exercised in such a manner as to harmonize with, and not contravene, the principle of competitive examination, which is the fundamental and essential feature of the constitutional provisions relating to the civil service (Chittenden v. Wurster, 152 N. Y. 356, 46 N. E. 857); and, where the establishment of a rule which is plainly at variance with the spirit of the constitution is attempted, it should be disregarded by the court. By a parity of reasoning, where an applicant for a position in the civil service has clearly established his title to eligibility by both merit and fitness, he should not be deprived of his constitutional rights by the arbitrary action of the body whose duty it is to honestly administer and not obstruct the law. Entertaining, as we do, this view of the case presented to us, we think the relator is entitled to the relief he seeks, save in one particular. The writ issued requires the defendants to certify that the relator is entitled to be appointed to the position for which he was examined. Such a certificate, in our opinion, would transcend the power of the examiners. Their duty is performed when they certify that the relator is qualified by both merit and fitness to be placed upon the eligible list, and, when this is done, the appointing power, in obedience to the plain mandate of the constitution that "appointments shall be made according to merit and fitness, ascertained by competitive examinations," and that preference shall be given to veterans of the Civil War, must assume the responsibility of making the appointment.

The judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.