(70 Misc. Rep. 597.)

DARLING v. MAGUIRE et al., Municipal Civil Service Commission.

(Supreme Court, Special Term, New York County.   February, 1911.)

1. MUNICIPAL CORPORATIONS (§ 217*)—CIVIL SERVICE—COMPETITIVE EXAMINATIONS—RATING OF CANDIDATES—REVIEW BY COURT.

   Where the determination of the civil service commissioners in rating candidates in contested examinations is not palpably illegal, the court should not intervene.

   [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 217.*]

2. MUNICIPAL CORPORATIONS (§ 217*)—CIVIL SERVICE—COMPETITIVE EXAMINATIONS—RATING OF CANDIDATES—REVIEW BY COURT.

   Questions propounded to candidates in a civil service examination for the position of X-ray photographer, which have some relevancy to the duties of the position, do not render the examination illegal, though one of the questions was so vague that it would be impossible correctly to answer it, and another treated of a condition so rare as to be a medical curiosity; the character of the questions, so long as relevant, being within the discretion of the commissioners, which will not be interfered with by the court, in the absence of abuse.

   [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 217.*]

3. MUNICIPAL CORPORATIONS (§ 217*)—CIVIL SERVICE—COMPETITIVE EXAMINATIONS—RATING OF CANDIDATES—REVIEW BY COURT.

   A written statement, at the top of a civil service examination paper for the position of X-ray photographer, that "a systematic verification of the statements in this paper will be made," does not amount to a contract with the candidates that their answers and statements therein will be verified, and the examiner's omission to verify such statements by external inquiries does not vitiate the examination.

   [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 217.*]

4. MUNICIPAL CORPORATIONS (§ 217*)—CIVIL SERVICE—COMPETITIVE EXAMINATIONS—RATING OF CANDIDATES—REVIEW BY COURT.

   Such examination is not vitiated because, in estimating the credit to be given on the "experience paper," the examiner took into consideration the candidate's method of expression; the whole matter as to the candidate's experience resting in the discretion of the examiner, in the absence of bad faith.

   [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 217.*]

5. MUNICIPAL CORPORATIONS (§ 217*)—CIVIL SERVICE—COMPETITIVE EXAMINATIONS—RATING OF CANDIDATES—REVIEW BY COURT.

   One occupying by temporary appointment a position required to be filled by appointment after competitive examination does not acquire a preference over those obtaining a higher rating upon the examination, under Civil Service Law (Consol. Laws 1909, c. 7) § 14, providing that appointments shall be made to or employment be given in the competitive class that are not filled by promotion, reinstatement, transfer, or reduction; he not being a legal incumbent of the office after a competitive examination.

   [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 217.*]

Application by Byron C. Darling for a writ of mandamus against John C. Maguire and others, constituting the Municipal Civil Service Commission of the City of New York.   Writ denied.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

John L. Linehan, for relator.
Elliott S. Benedict, Asst. Corp. Counsel, for respondents.

GOFF, J.   A former application for a writ of mandamus having been made by petitioner, and denied because it did not set forth evidentiary facts sufficient to warrant the relief sought, he now renews his application on other motion papers for the same relief; that is to say, for a writ directed to the respondents, as civil service commissioners of the city of New York, commanding them to revoke their certification to the trustees of Bellevue and Allied Hospitals for appointment of an X-ray photographer, and to set aside a competitive examination for that position.   Such an examination was held on January 14, 1910, at which time petitioner was an incumbent of the position named under a "temporary" appointment.   Relator's name appeared seventh on the resulting eligible list.   Drs. Stewart and Hirsch, who had respectively the highest and the next highest rating, were certified to the trustees, and about May 1, 1910, were given probationary appointments, displacing plaintiff from his position.

[1] The rule which must govern the court in applications of this nature has been formulated by the Court of Appeals in People ex rel. Schau v. McWilliams, 185 N. Y. 92, 101, 77 N. E. 785, 787, as follows:

"If the classification of the commission violates the Constitution or the statute, mandamus should issue to correct the classification.   If the action of the commission is not palpably illegal the court should not intervene."

In People ex rel. Braisted v. McCooey, 100 App. Div. 240, 91 N. Y. Supp. 436, the court said:

"In the absence of charges of bad faith or illegal action, we cannot review the determination of the civil service commissioners in rating candidates in competitive examinations, either by certiorari or by mandamus."

Petitioner makes no charges of bad faith.   He bases his right upon a claim of illegal action in so conducting the examination and making the ratings as to be violative of the constitutional provisions that so far as practicable appointments shall be made according to merit and fitness.   Const. art. 5, § 9.   Two examination papers were presented to the candidates.   To one, termed the "technical paper," a weight of 6 was given, and to the other, the so-called "experience paper," a weight of 4.

Relator criticises 8 of the 15 questions on the technical paper as improperly constructed, displaying ignorance of the subject of examination on the part of the examiner, and as not calculated to ascertain either merit or fitness for the position sought.   His criticism is not destitute of merit.   Question 9, for instance, is as follows:

"Describe the primary of a Rhumkorf coil;   (b) a closed magnetic circuit;   (c) their effect upon the secondary winding."

"(b)" and "(c)" are so indented as to appear to be subdivisions of the general subject "Rhumkorf coil"; but that cannot be true, because the manufacturer of these instruments describes them as types of open magnetic circuit transformers.   To what does the word "their" apply

in "(c)"? It cannot apply both to the primary of a Rhumkorf coil and to a closed magnetic circuit, because these two antecedents do not exist together. "(c)" is, therefore, a question impossible to answer correctly. The examiner's explanation is a suggestion that the questions and answers be compared.

Again, question 13 is as follows:

"Differentiate by fluoroscopic examination between a normal humerus and one with osteomalacia."

Relator has examined 8,000 cases without finding one with osteomalacia, which is a medical curiosity. The ability to differentiate between these two phenomena has only a most remote bearing upon a candidate's fitness for the position. It may very well be that such questions might be propounded upon a technical paper as would constitute illegal action, such, for instance, as a question "What is the population of Hong Kong?" Such a question would not be at all relevant to the duties of the position; but the questions criticised, however poorly selected and constructed they may be, are yet relevant, and it may be that the answers which they elicit have some value to the expert as a test of knowledge of the subject.

[2] In view of the relevancy of the questions to the duties of the position, it cannot be said that the action of the commissioners was illegal. These are matters within the discretion of the commissioners, with which the court, in the absence of evidence showing abuse, will not interfere. Matter of Allaire v. Knox, 62 App. Div. 29, 70 N. Y. Supp. 845, affirmed 168 N. Y. 642, 61 N. E. 1127; People ex rel. Apfel v. Casey, 66 App. Div. 211, 72 N. Y. Supp. 945; Matter of Donovan v. Cantor, 89 App. Div. 50, 85 N. Y. Supp. 406; People ex rel. McCabe v. Matthies, 92 App. Div. 16, 87 N. Y. Supp. 196, affirmed 179 N. Y. 242, 72 N. E. 103.

Relator is not aided by section 22 of the civil service law. The right to a writ of mandamus therein granted exists only in favor of those injured by violations of the provisions of that section. Relator is not a discharged soldier, sailor, or marine, nor has he served in the volunteer fire department, nor has he been removed; his original appointment having been only temporary.

Relator claims illegality of action on the part of the commissioners in the so-called "experience paper," which contains questions adapted to trace the personal history of the candidates, especially in reference to familiarity with actual radiographic work. There is this note at the top of the paper:

"A systematic verification of the statements in this paper will be made."

In fact, such a verification was made. The commissioners wrote to various institutions with which candidates claimed to have been connected, and received answers; but the examiner did not avail himself of the information so elicited. If he had done so, and if he had investigated further, to the extent of relator's inquiries, he would have found that many of the candidates had not had that extent of experience in radiography which from their answers they appeared to have had, though such answers are not claimed to be false nor intentionally misleading.

[3] That note, that a systematic verification of statements would be made, was not a contract between the commission and each candidate, but rather a warning to avoid misleading or exaggerated statements. The answers of the candidates were required to be made under oath. Those of persons to whom the candidates referred could not be required to be made under oath, and might be largely colored by considerations of friendship or antagonism. If the truth of such answers, in turn, must be investigated, whenever there is a variance between the answers of candidates and those to whom they referred, an interminable task would devolve upon the commission.

[4] Still another claim of illegality is made, in that the examiners credited applicants, not only for the length and quality of their previous experience, as disclosed by answers to the experience paper, but also for the method with which they answered questions propounded on the technical paper. If credit be given to the experience paper because of a candidate's theoretical knowledge, it is possible, pursuing that theory to an extreme conclusion, that a candidate fresh from his books—crammed with knowledge, but with absolutely no experience— might attain the higest rating. However, it was not the fullness of knowledge that influenced the examiner in rating the experience paper, but the method of expressing it. To the mind of the expert, method may very well be an indication of training and experience. Actual time occupied in a calling is not the only test of fitness. The whole matter, in the absence of bad faith, rests in the discretion of the examiners.

Relator cites People ex rel. Drake v. Common Council, 26 Misc. Rep. 522, 57 N. Y. Supp. 617, as authority for the propositions that mandamus will lie to set aside an illegal rating, and that a rating is illegal which is for merit only; but the decision was reversed (People ex rel. Drake v. Knauber, 43 App. Div. 342, 60 N. Y. Supp. 298; Id. 163 N. Y. 23, 57 N. E. 161), on the ground that the examination in that case was for both merit and fitness.

There is a statement in relator's affidavit that the experience paper "is supposed to be limited to actual experience in practice." No such note appears on the paper itself, which is annexed to respondent's affidavits, nor is there any rule of law nor, so far as appears, any regulation of the commissioners to that effect.

[5] Relator makes a further claim of illegality, in that, having passed a competitive examination at the time when he was an incumbent of the position of radiographer, he is entitled to the appointment as a matter of right, notwithstanding the fact that he has failed to receive the highest rating. His argument is that it is the policy of the state to retain in office those whose services have been satisfactory rather than to displace them by new appointees. He claims this right under section 14 of the civil service law, providing that "appointments shall be made to or employment shall be given in the competitive class that are not filled by promotion, reinstatement, transfer or reduction," from which language there is an inference that employés promoted, transferred, or reduced are entitled to a preference, and that those in office are entitled to reinstatement after having qualified in a competi-

tive examination. He cites Matter of Peters v. Adam, 56 Misc. Rep. 29, 106 N. Y. Supp. 158, and People ex rel. Kelly v. Milliken, 68 Misc. Rep. 101, 124 N. Y. Supp. 924. These were cases of transfer by officers having the appointing power. The trustees of Bellevue Hospital have made no request that relator be transferred or reinstated.

But, by analogy with the cases cited, it is claimed that relator is absolutely entitled to reinstatement as a permanent employé. The tenure of his office at the time when he was superseded is not more clearly set out in the moving papers than that it was a "temporary" appointment, from which it may be inferred that it was to continue until a competive examination should be made. Relator does not explain how he could have been a legal incumbent of a temporary position for a year in the face of the prohibition of the civil service law of provisional appointments to continue for more than two months. Section 15, subd. 1. If relator was not a legal incumbent of the office at the time when he was superseded, certainly he has no right of preference over candidates higher on the list. Even if he were then a legal incumbent he would have no right to retain the position. A temporary appointment never ripens into a permanent appointment. People ex rel. Orr v. Scannell, 66 N. Y. Supp. 182. The trustees cannot be deprived of their right to make a selection of an appointee. People ex rel. Balcom v. Mosher, 163 N. Y. 32, 57 N. E. 88, 79 Am. St. Rep. 522. Their acceptance of relator as a temporary appointee did not preclude them from all opportunity to select an employé whose position was to be permanent.

Application denied.