(84 South. 816)

## CITY OF MOBILE et al. v. MOBILE ELECTRIC CO. (1 Div. 110.)

(Supreme Court of Alabama. Dec. 4, 1919. Rehearing Denied Jan. 1, 1920.)

1. CONSTITUTIONAL LAW ☞135, 298(7)—ELECTRICITY ☞11—CHANGE BY STATE OF AGREED ELECTRIC RATES NOT IMPAIRMENT OF CONTRACT OR DENIAL OF DUE PROCESS.

The state has authority to fix reasonable rates for supplying electricity to inhabitants of a city which supersede other rates fixed by previous existing contract, and the legitimate use of this police power does not impair the obligation of a contract or deprive the consumer of property without due process within the state or federal Constitutions.

2. PUBLIC SERVICE COMMISSIONS ☞7—RIGHT TO CHANGE LIGHT RATES NOT GRANTED BY STATUTE HELD DEPENDENT ON LEGALITY OF AGREEMENT THEREFOR.

Acts 1915, p. 865, § 3, specifically limits the power of the Public Service Commission so as not to affect any subsisting rate fixed by an existing contract or any future contract which may be entered into between a municipality and a public service corporation, firm, or person, so that, where the commission changed such a rate pursuant to an agreement therefor, the validity of such act must depend upon the legality of the agreement.

3. MUNICIPAL CORPORATIONS ☞244(2)—STATUTORY METHOD OF CONTRACTING MUST BE STRICTLY FOLLOWED.

Where the mode of contracting is not prescribed by statute or charter, a municipality may contract as other corporations or individuals, but where prescribed, the particular mode of execution is exclusive, and must be pursued to bind the corporation.

4. MUNICIPAL CORPORATIONS ☞243 — CONTRACT EXECUTED BY OFFICERS FOR CITY, AND NOT IN CITY'S NAME, BY OFFICERS, VOID.

In view of Code 1907, § 1183, providing that contracts shall be executed in the name of the city by its authorized officers, a contract resolution not signed in the name of the city, but merely by commissioners purporting to act for it, is one to which the city is not a party and which is not merely defective or irregular, but is no contract.

5. ESTOPPEL ☞62(4)—CITY CANNOT BE ESTOPPED BY ILLEGAL CONTRACT.

Persons dealing with municipalities are presumed to know the legal limitations upon their contractual power, and cannot plead estoppel because of illegal contract, because they could not have been misled thereby.

6. MUNICIPAL CORPORATIONS ☞993(1)—TAXPAYER MAY ENJOIN USELESS ELECTION TO REINSTATE CONTRACT STILL IN FORCE.

Where the resolution of city commissioners attempting to suspend a contract for furnishing light to city residents was a nullity, an election to adopt an ordinance to reinstate the original contract would be useless and an expensive performance, and could be enjoined by a complainant electric company as a taxpayer.

7. APPEAL AND ERROR ☞1043(5) — INJUNCTION HELD NOT INJURIOUS, THOUGH TOO BROAD.

Where an injunction was too broad in preventing a city's commissioners from rescinding a void resolution setting aside a contract fixing electric rates, *held*, that neither the city nor the public had been injured.

8. APPEAL AND ERROR ☞750(1)—ASSIGNMENT AGAINST ISSUING INJUNCTION DOES NOT EXTEND TO ITS BEING TOO BROAD.

An assignment of error in issuing an injunction does not go to so much thereof as makes it too broad by enjoining a right to repeal an illegal contract or resolution otherwise than by popular election.

Gardner, J., dissenting.

### On Rehearing.

9. MUNICIPAL CORPORATIONS ☞227—STATUTE ON EXECUTION OF CITY CONTRACTS NOT IMPLIEDLY REPEALED BY COMMISSION GOVERNMENT STATUTE.

Code 1907, § 1183, providing how a city may execute a contract is not repealed by implication by Acts 1911, p. 330, §§ 6, 8, providing for a commission form of government, there being no conflict or repugnancy, and both may be operative.

10. STATUTES ☞159 — REPEAL BY IMPLICATION NOT FAVORED.

Repeal by implication is not favored, and it is only when two laws are so repugnant or conflicting that it must be presumed the Legislature intended the latter should repeal the former that there is a repeal by implication, but both will be given effect when possible.

11. STATUTES ☞162—SPECIAL LAW NOT REPEALED BY GENERAL LAW INCLUDING SAME SUBJECT.

A law specially providing for a special subject will not be considered repealed by a subsequent law which deals with a general subject in a general way, though the specific subject and a special provision may be included in the general subject and the general provision.

12. MUNICIPAL CORPORATIONS ☞227 — COMMISSION GOVERNMENT STATUTE DOES NOT REPEAL FORMER CONTRACT ACT BY COVERING SUBJECT.

Code 1907, § 1183, fixing the mode of execution of a city contract, was not superseded by Acts 1911, p. 330, §§ 6, 8, providing for commission form of government on the theory that the latter statute completely covers the matter in the former, since the latter provides that all laws not inconsistent with its provisions "shall apply to and govern said city, after it shall become organized under the commission form of government."

13. MUNICIPAL CORPORATIONS ☞227 — STATUTE PROVIDING MODE OF CONTRACT NOT APPLICABLE ALONE TO ALDERMANIC GOVERNED CITIES.

Code 1907, § 1183, was not intended to apply to contracts to be executed only by cities operating under the aldermanic form of government, which had mayors, as distinguished

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

from other governing boards or officials in commission cities, since such section makes provisions for contracts in other instances and through officials other than mayors.

14. MUNICIPAL CORPORATIONS ⬅️➡️244(2)—SUBSTANTIAL OR ATTEMPTED COMPLIANCE NECESSARY TO CONTRACT'S VALIDITY.

While a literal compliance even with a mandatory statute is not essential, and substantial compliance would suffice, yet, where there was no substantial or even attempted compliance with one of the most important and mandatory requirements of Code 1907, § 1183, relating to city contracts, the agreement was void.

McClellan and Gardner, JJ., dissenting on rehearing.

Appeal from Circuit Court, Mobile County; Joel W. Goldsby, Judge.

Bill by the Mobile Electric Company against the City of Mobile and its municipal authorities to restrain and enjoin the holding of an election and from passing or enacting a proposed ordinance accompanying a petition asking for said election and to decree that the contract suspending the original contract with the city be declared valid and binding. From a decree granting a temporary injunction, the municipality appeals. Affirmed.

The bill alleges a perpetual contract existing between the city of Mobile and the complainant for lighting rates to customers and a contract for lighting the city, with certain discounts for payments at a certain time, made and entered into December 31, 1906, but on the 8th day of June, 1910, it was mutually agreed between the city and complainant to amend the contract as to the discount rate; that after the declaration of war, and because of conditions arising of an unexpected nature, on September 10, 1918, complainant addressed a petition to the municipal authorities to suspend the operation of the contract for the period of the war and one year after the declaration of peace, with the understanding that complainant would immediately petition the Alabama Public Service Commission to fix such rates to be charged by complainant as should be just and fair; that in said petition complainant did not propose any rates, but left the whole matter to the Alabama Public Service Commission; that on that day at a regular meeting of the board of commissioners of the city of Mobile said petition was duly considered, and a resolution was introduced and adopted and entered in full on the minutes declaring that the contract between the complainant and the city be suspended pending the duration of the war and until one year after peace was declared, with the understanding that complainant should apply to the Alabama Public Service Commission to fix the rate

and abide by the rates thus fixed; that this action constituted a valid and binding contract between complainant and the city, and operated as a suspension of the first amended contract between the city and complainant for the period of the war and until one year after the declaration of peace. The bill sets out the petition to the Alabama Public Service Commission for an increase in rates, their order fixing the rates, and alleges that the complainant has put into effect these rates in good faith as per the contract. The bill then alleges that peace has never been declared between the United States and the German government, and that the agreement between the complainant and the city to suspend the contract is still in full force and effect.

The bill then sets up a provision to the acts of the Legislature of September 28, 1915, amending the law providing for a commission form of government for the city of Mobile, making a provision for an initiative and referendum, and that on April 29, 1919, a petition was filed with the commissioner to the city of Mobile signed by more than 25 per cent. of the entire number of qualified voters within the city of Mobile requesting said commissioners to enact into law an ordinance substantially, in effect, that the contract of December 31, 1906, as amended, be held valid and binding on said corporation, and that the same be instated and forthwith be given full force and effect, and that the resolution adopted by the commissioners on September 18, 1918, suspending said contract be held for naught; thereafter that the commissioners of Mobile at a regular meeting heard said petition, and at said meeting duly adopted a resolution that there should be and was submitted to the voters of the city of Mobile at a special municipal election the question whether or not said ordinance contained in said petition should be adopted. The bill then alleges that the commissioners have published a notice that said election would be held at a given time, have passed the proper resolutions looking to that end, and that, unless restrained, said election would be held. Then the bill alleges that the act is unconstitutional and void under which the election is sought to be held, that the adoption of the ordinance would impair the obligation of the contract, and that, having entered into the agreement to permit the Alabama Public Service Commission to fix the rates, and the Alabama Public Service Commission having assumed jurisdiction and fixed the rates, the city is now estopped to withdraw said jurisdiction from the Alabama Public Service Commission or to take any steps to interfere with the jurisdiction of the Alabama Public Service Commission over the rates to be charged by the complainant. The various contracts, orders, petitions, etc., re-

⬅️➡️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ferred to in the bill are made exhibits to the bill.

Robert H. Smith, of Mobile, for appellant. Section 1183, Code 1907, governs the execution of contracts by municipalities, and these contracts can be made in no other manner than that provided by this statute. 28 Cyc. 664; 208 Pa. 396, 57 Atl. 837; 3 McQuillin, Mun. Corp. 2608. A ratification of an invalid contract amounts to naught. 93 Ala. 484, 9 South. 164; 121 U. S. 135, 7 Sup. Ct. 865, 30 L. Ed. 923; 31 Cyc. 1261; 19 R. C. L. 1075. No estoppel arises in this case. 149 Ala. 301, 42 South. 819; 76 Ala. 197; 114 Ala. 408, 21 South. 995, 62 Am. St. Rep. 111; 37 Ala. 342; 15 Ala. 696; 10 R. C. L. 697. All persons dealing with municipalities are presumed to know the law and the legal limitations upon the contractual powers of municipalities. 112 Wis. 364, 88 N. W. 310, 58 L. R. A. 100, 88 Am. St. Rep. 969; 24 Mont. 521, 63 Pac. 99, 55 L. R. A. 336, 81 Am. St. Rep. 453; 271 Ill. 602, 111 N. E. 573, L. R. A. 1916D, 991; 3 McQuillin, Mun. Corp. 1166. On the question as to whether or not section 1183, Code 1907, is supplanted by the provisions of the Commission Government Act of 1911, and as to whether such section is mandatory or directory, counsel makes an extensive argument, but without citation of authority.

Inge & Kilborn and Stevens, McCorvey & McLeod, all of Mobile, for appellee. A court of equity, at the suit of a taxpayer, will enjoin municipal authorities from improperly and illegally expending public funds. Inge v. Public Works of Mobile, 135 Ala. 187, 33 South. 678, 93 Am. St. Rep. 20; Kumpe v. Bynum, 158 Ala. 311, 48 South. 55; Railroad Co. v. Dunn, 51 Ala. 128; Allen v. Intendant, 89 Ala. 641, 8 South. 30, 9 L. R. A. 497.

The state, in the exercise of its police power, irrespective of an existing contract, may fix or regulate rates to be charged by public utility corporations. Union Dry Goods Co. v. Ga. Public Service Corporations, 248 U. S. 372, 39 Sup. Ct. 117, 63 L. Ed. 309; Atlantic Coast Line Railroad Co. v. Goldsboro, 232 U. S. 548, 34 Sup. Ct. 364, 58 L. Ed. 721; Northern Pacific Railroad Co. v. Minn. ex rel. Duluth, 208 U. S. 583, 28 Sup. Ct. 341, 52 L. Ed. 630; Manigault v. Springs, 199 U. S. 473, 26 Sup. Ct. 127, 50 L. Ed. 274; Wabash Railroad Co. v. City of Defiance, 167 U. S. 88, 17 Sup. Ct. 748, 42 L. Ed. 87; City Council of Montgomery v. Capital City Water Co., 92 Ala. 361, 9 South. 339; Chicago, B. & Q. R. Co. v. State of Nebraska ex rel. Omaha, 170 U. S. 57, 18 Sup. Ct. 513, 42 L. Ed. 948; Mississippi Railroad Commission v. Mobile & Ohio Railroad Co., 244 U. S. 388, 37 Sup. Ct. 602, 61 L. Ed. 1216; City of Portland v. Public Service Commission of Oregon, 89 Or. 325, 173 Pac. 1178; City of Salem v. Salem Water,

Light & Power Co., 255 Fed. 295, 166 C. C. A. 465.

Where modification of rates has been made by a city and a public utility corporation, the citizens of such city have no vested interest in the original rates, so that they could complain of such modification. Asher v. Hutchinson Water, Light & Power Co., 66 Kan. 496, 71 Pac. 813, 61 L. R. A. 52.

Parties may alter or modify, at pleasure, the terms of a contract, without any new consideration for the change, other than that of mutual assent. Hertz v. Montgomery Journal Publishing Co., 9 Ala. App. 178, 62 South. 564–567; Andrews v. Tucker, 127 Ala. 612, 29 South. 34.

A contract may consist of more than one paper, and where different instruments of writing are made at the same time, by the same parties, and relating to the same subject-matter, they constitute but one agreement. Whitehurst v. Boyd, 8 Ala. 375; County of Moultrie v. Rockingham Ten Cent Savings Bank, 92 U. S. 631–636, 23 L. Ed. 631; Akin v. Ordinary of Bartow County, 54 Ga. 59; City of California v. Bunceton Telephone Co., 112 Mo. App. 722, 87 S. W. 604; Schwabe v. Moore, 187 Mo. App. 74, 172 S. W. 1157; Stevens v. City of Muskegon, 111 Mich. 72, 69 N. W. 227, 36 L. R. A. 777.

Matters upon which a municipal corporation desires to legislate must be put in the form of an ordinance, while acts that are done in its ministerial capacity, and for a temporary purpose, may be put in the form of a resolution. 2 McQuillin on Municipal Corporations, § 633, p. 1393.

Municipal corporation may be estopped from asserting the invalidity of its contract or other obligation. Hagerman v. Town of Hagerman, 19 N. M. 118, 141 Pac. 613, L. R. A. 1915A, 904; State of Washington ex rel. Washington Paving Co. v. C. W. Clausen, State Auditor, 90 Wash. 450, 156 Pac. 554, L. R. A. 1917A, 436; City of Salem v. Salem Water, Light & Power Co., 255 Fed. 295, 166 C. C. A. 465.

The subject of an act of the Legislature of Alabama must be clearly expressed in its title. Section 45, Constitution of Alabama of 1901; Weaver v. Lapsley, 43 Ala. 224; Tuscaloosa Bridge Co. v. Olmstead, 41 Ala. 9; Ex parte Cowert, 92 Ala. 94, 9 South. 225; Harper v. State, 109 Ala. 28, 19 South. 857; Black v. State, 144 Ala. 92, 40 South. 611; Ex parte Reynolds, 87 Ala. 138, 6 South. 335.

If there is no lawful authority to call or hold an election, which is not a political matter, it may be enjoined by a court of equity. De Kalb County v. Atlanta, 132 Ga. 727, 65 S. E. 72; Macon v. Hughes, 110 Ga. 795, 36 S. E. 247; Cascaden v. Waterloo, 106 Iowa, 673, 77 N. W. 333; Solomon v. Fleming, 34 Neb. 40, 51 N. W. 304; Shoemaker v. Des Moines, 3 L. R. A. (N. S.) 382, note.

ANDERSON, C. J. [1] It is unquestionably the law that the state has the authority to fix reasonable rates to be charged by a corporation for supplying electricity to the inhabitants of a city, which supersede other rates agreed on in an existing contract made previously between the company and the consumer, and a legitimate use of this police power does not impair the obligation of a contract or deprive the consumer of property without due process within the influence of the state or federal Constitution. Union Dry Goods Co. v. Georgia Public Service Corp., 248 U. S. 372, 39 Sup. Ct. 117, 63 L. Ed. 309.

"It is settled that neither the 'contract' clause nor the 'due process' clause has the effect of overriding the power of the state to establish all regulations that are reasonably necessary to secure the health, safety, good order, comfort, or general welfare, of the community; that this power can neither be abdicated nor bargained away, and is inalienable even by express grant, and that all contracts and property rights are held subject to its fair exercise." Atlantic Coast Line v. Goldsboro, 232 U. S. 548, 34 Sup. Ct. 364, 58 L. Ed. 721.

[2] In the instant case, however, the state has not granted to the Public Service Commission the general and unqualified power to fix and regulate the rates of electric light companies. This class of public utilities was placed under the supervision and control of said Public Service Commission by Acts 1915, p. 865; but the right to fix or regulate rates was specifically limited by the latter part of section 3 of the said act so as not to affect any subsisting rate fixed by an existing contract or any future contract which may be entered into between any municipality and a public service corporation, firm, or person.

[3] The result is the fixation of the rate in the instant case by the Public Service Commission must depend upon the legal suspension or modification of the existing contract between the appellant and the appellee. The electric company claims that the contract was not operative as to the period dealt with by the Public Service Commission, in that it had been suspended for the period of the war and for one year after the declaration of peace. On the other hand, the city contends that the attempted modification or suspension of the contract was not legal, and was but an abortive effort upon the part of the governing board to do so, and that the said contract was in legal force and effect when the Public Service Commission acted. Generally speaking, if the mode of contract by a municipality is not prescribed by statute or charter, the municipality may make the contract in the same manner as other corporations or individuals. On the other hand, when the statute or charter prescribed a particular mode for the execution of such contracts, that mode is exclusive and must be pursued or the contract will not bind the corporation. Dillon on Munic. Corp. vol. 2, § 783, and numerous cases cited in note 1, including the case of Montgomery County v. Barber, 45 Ala. 237; McQuillin on Munic. Corp. vol. 3, § 1178, p. 2608.

[4] Section 1183 of the Code of 1907 provides as follows:

"Contracts entered into by a municipality shall be in writing, signed and executed in the name of the city or town, by the officers authorized to make the same, and by the party contracting. In cases not otherwise directed by law or ordinance, such contracts shall be entered into and executed by the mayor in the name of the city or town, and all obligations for the payment of money by the municipality except for bonds and interest coupons, shall be attested by the clerk. This section shall not be construed to cover purchases for the ordinary needs of the municipality."

This statute provides that the contract shall be in writing, and "signed and executed in the name of the city or town" by the officer authorized to make the same, while the last part of the provision names the mayor as the officer to execute the same, except when the law or ordinance directs some other officer to do so; but in any event, whether it be executed by the mayor or some other officer named in some other law or ordinance, it shall be executed in the name of the city or town by the officer, and not in the name of the officer. It may be conceded, but which we do not decide, that the petition of the electric company and the resolution adopted and subsequently signed by the commissioners would be considered together and treated as a compliance with the requirement that the contract had to be in writing, and yet not all of the statutory requirements would be met, as the resolution was not signed in the name of the city, but merely by the commissioners purporting to act for the city; in other words, the city is not a party to the contract, and it is not a question of a defective or irregular execution of same, but a case of non est factum.

[5] Nor can the city be estopped by a contract that it did not execute. Persons dealing with municipalities are presumed to know the law and to know the legal limitations upon the contractual power of municipalities, and cannot plead estoppel, because they could not have been misled about a thing which they know. 3 McQuillin on Munic. Corp. § 1166; East. Ill. School v. Charleston, 271 Ill. 602, 111 N. E. 573, L. R. A. 1916D, 991; State v. Helena, 24 Mont. 521, 63 Pac. 99, 55 L. R. A. 336, 81 Am. St. Rep. 453.

[6-8] The writ enjoined the said officials from holding or attempting to hold an elec-

tion on June 23, 1919, or at any other time, for the purpose of voting on the rejection or adoption of an ordinance submitted to the board by a certain petition of the voters asking for an election for the purpose of rescinding the resolution previously adopted by the commission suspending the contract rate and to reinstate said contract. As the contract was never legally suspended, and the resolution attempting to do so was a nullity, an election to adopt an ordinance to reinstate said contract would be a useless and expensive performance, and there was no error in granting the injunction to this extent, as the proposed election was not of a political nature, but involved business or property rights, and the complainant, as a taxpayer, had the right to enjoin same. In fact, this feature of the injunction is not questioned in brief of appellant's counsel, as the sole ground of complaint is against so much of the injunction as prevents the city officials from accepting or creating into law the ordinance proposed by the petition, independent of an election. As the resolution of suspension was void, this appellant cannot complain of any action on the part of the city officials in attempting to repeal or rescind a void resolution, and, though the injunction was to this extent perhaps too broad, the appellant or the public have in no wise been injured thereby, as the resolution is a nullity, whether formally repealed or rescinded or not. Moreover, the assignment of error goes to error in issuing the injunction, and not to so much thereof as only enjoins the right to repeal the resolution otherwise than by an election.

The decree of the circuit court is affirmed. Affirmed.

McCLELLAN, SAYRE, SOMERVILLE, THOMAS, and BROWN, JJ., concur.

GARDNER, J., thinks that section 1183 of the Code is purely directory, and dissents.

### On Rehearing.

ANDERSON, C. J. [9-11] It is suggested and argued upon application for rehearing that section 1183 of the Code of 1907 has been superseded by Acts 1911, p. 330, §§ 6 and 8, providing a commission form of government for that class of cities to which this appellant belongs (a point not discussed in the original opinion, and not suggested in brief of counsel upon the original hearing). In other words, the insistence is that said section 1183 has been repealed by implication by the said act, in so far as it applies to this appellant. A careful examination of these sections of the act fails to disclose such a conflict or repugnancy with section 1183 as to deprive them both of a natural and legiti-

mate field of operation. Section 1183 deals specially with the method of making and executing contracts by all municipalities, while the sections referred to in the act of 1911 merely prescribe the method for the general conduct and transaction of business with no special mention or reference to the subject as contained in section 1183 of the Code. Repeal by implication is not favored. It is only when two laws are so repugnant to or conflict with each other that it must be presumed that the Legislature intended that the latter should repeal the former. This is never the case if there be a reasonable field of operation by a just construction for both; for then they will both be given effect. This is preferable to repeal by implication. Special provisions relating to special subjects control general provisions relating to general subjects. The thing specially treated will be considered as exception to the general provision. When a special subject has been specially provided for by law, it will not be considered as repealed by a subsequent law which deals with a general subject in a general way, though the specific subject and a special provision may be included in the general subject and the general provision. 7 Mayfield's Dig. 850, and many cases there cited.

[12] Nor can we say that section 1183 was superseded by Acts 1911, p. 330, upon the theory that the subject there dealt with was so completely covered by the act as to exclude all previous laws, for the reason that a contrary intent appears upon the face of the act. Indeed, we find the following recital in section 6 of the act:

"All laws governing such city and not inconsistent with the provisions of this act shall apply to and govern said city, after it shall become organized under the commission form of government provided by this act."

[13] Neither are we persuaded that section 1183 of the Code was intended to apply to contracts to be executed only by cities operating under the aldermanic form of government, strictly speaking, and which had mayors, as distinguished from other governing boards or officials, as the section itself evinces a legislative purpose to make provision for the execution of contracts in other instances and through officials other than the mayor.

[14] We feel that the questions treated in the original opinion have been properly decided, and that it is needless to prolong the discussion of same, but will merely add that we are not in disagreement with counsel in the slightest in the assertion that a literal compliance, even with a mandatory statute, is not essential, or that a substantial compliance would not suffice. Here, however,

there was no substantial, or even attempted, compliance with one of the most important and mandatory requirements of section 1183 of the Code.

Rehearing denied.

SAYRE, SOMERVILLE, THOMAS, and BROWN, JJ., concur.

GARDNER, J., dissents.

McCLELLAN, J. (dissenting). Code, § 1183, was originally enacted as a part of section 42 of the act approved August 13, 1907. Gen. Acts 1907, p. 815. That act was designed to apply to and to govern municipal administrations under what has been called in more recent years the aldermanic form of government. Section 1183 (Code) prescribed a particular mode for the execution of contracts (not therein excepted) of municipalities, the prescription being that they should be "in writing, signed and executed in the name of the city or town, by the officers authorized to make the same, and by the party contracting"; that, unless "otherwise directed by law or ordinance, such contracts" should be entered into and executed "by the mayor in the name of the city or town." By the act approved April 8, 1911 (Gen. Acts 1911, pp. 330–355), a commission form of municipal government was created for cities of the class to which the city of Mobile belonged. This act effectually annulled, so far as Mobile was concerned, the aldermanic form of municipal government, and with it passed the office and officer called "mayor" in the act of 1907, noted ante. In and by section 8 of the act approved April 8, 1911, the power and authority of the municipality to contract and the method or mode to effectuate the imposition of and the subjection to obligations of contract were provided for in terms pointedly inconsistent with the quoted provisions of Code, § 1183. That section (8 of the act of 1911) expressly provides, among other things pertaining to the record of the commission's proceedings, that the affirmative vote of two members "shall be necessary and *sufficient*" for the "*transaction of any business of any sort by said board*, or *the exercise of any of the power conferred upon it* by the terms of this act, or that may hereafter be conferred upon it." (Italics supplied.) Broader terms could not have been selected in which to express the comprehensive idea. The word "sufficient" should be accorded its ordinary signification, and when that is done the power to contract, in the mode there (section 8) prescribed, was sufficiently, effectually exercised, regardless of the provisions of Code, § 1183, which were thereby repealed.

I therefore dissent from the opinion of the majority.