48 So.2d 47

## CITY OF BIRMINGHAM v. LEE et al.

### 6 Div. 930.

Supreme Court of Alabama.

Oct. 12, 1950.

Thos. E. Huey, Jr., Acting City Atty., Mayer U. Newfield, Asst. City Atty., and Maurice F. Bishop, all of Birmingham, for appellant and intervener Merrill.

Bainbridge & Mims, Birmingham, for Personnel Board.

Chester Austin, Birmingham, for intervening defendants.

240

. Lawrence K. Andrews, Union Springs, for Alabama League of Municipalities, amicus curiæ.

STAKELY, Justice.

This is a proceeding instituted by the Commissioners of the City of Birmingham against the members of the Personnel Board of Jefferson County and against its Director of Personnel for a declaration by declaratory judgment of the rights of Lem D. Merrill to the position of Superintendent of Streets and Garbage of the City of Birmingham. Lem D. Merrill intervened as petitioner. J. T. Waggoner, John Branyon and S. T. Johnson intervened as defendants. The case was tried before the court without the intervention of a jury and resulted in a judgment in effect that Lem D. Merrill is not entitled to hold the position of Superintendent of Streets and Garbage for the City of Birmingham and is not en-

titled to the salary that pertains to such position. The appeal here is from the foregoing judgment.

On January 1, 1934, Merrill was employed by the city as a District Supervisor of the Street and Garbage Department. Branyon and Johnson were employed as such supervisors on February 15, 1934 and Waggoner was employed on January 15, 1935. Branyon, Johnson and Waggoner have been continuously so employed to the present time. From January 1, 1934 to November 1, 1941 Merrill was continuously employed as District Supervisor. In June, 1939, George R. Byrum, Jr., while continuing to hold the title and receiving the salary as Superintendent of Streets and Garbage was assigned the duty of expediting W. P. A. Projects in the City of Birmingham. From that time until June 19, 1941, when he was granted military leave, Byrum devoted substantially all his time to this work.

On May 17, 1941, Byrum was ordered by the War Department to active duty with the armed forces. On June 19, 1941, the City of Birmingham granted Byrum military leave of absence and he immediately entered the military service. Byrum remained in the army and on military leave until June 22, 1947, when he returned and resumed his position as Superintendent of Streets and Garbage.

The duties of Superintendent of Streets and Garbage were assumed by Merrill in June, 1939, although he had only the title and pay of District Supervisor. In addition to discharging all the duties of Superintendent of Streets and Garbage, Merrill continued to discharge the duties of Central District Supervisor. The Central District is the most important of the four districts into which the city is divided.

Public Administration Service (PAS) on October 8, 1941, after several months of extensive examination and study, submitted to the Personnel Board and to the City Commission a comprehensive Position-Classification and Pay Plan for the Classified Service of the City. The plan covered 832 employes, more than 95% of all the classified employees of the city. This project was undertaken at the joint request of the Board and the Commission and was adopted on August 20, 1941, by the unanimous ac-

tion of both bodies and after detailed joint review of each position. As a part of this project, specifications based upon a detailed analysis of each position with regard to its difficulty, responsibility and relationship to other positions in the service were drawn up. At page 36 of the Reclassification and Salary Schedule Merrill was shown to have been reclassified and promoted from the position of District Supervisor to the position of Superintendent of Streets and Garbage with an increase in his salary from $200 to $225 per month. There was nothing opposite Merrill's name to indicate his status, that is, whether his status was temporary, provisional, probationary or permanent. In each instance, however, where the status of any of the 832 employees covered in the survey was either temporary, provisional, probationary or other than permanent, it was so noted.

The official minutes of the Personnel Board show that on October 20, 1941, the Board adopted the salary and classification plan after reviewing the same in detail and the following amendment appears: "Under the heading of Streets was Street Superintendent, Recommended: $250 to $300. Adopted $225 to $250. It was ordered that a copy of the Classification Plan be filed for record as a part of these minutes." On November 12, 1941, Branyon, Johnson and Waggoner were notified by the city that Merrill had become Superintendent of Streets and Garbage by action of the Personnel Board.

The reclassification and salary schedule was promulgated in the office of the Personnel Board under the direction of the Personnel Director. It sets forth the name of each person in the classified civil service employed by the city with the title and salary of each employee prior to October 30, 1941, and the new salary and status (whether temporary, provisional, probationary or permanent) of each employee. In certain instances employees were promoted from a lower to a higher classification and were assigned greater and more complex duties requiring a higher degree of ability with increases in pay. There were also instances where employees were demoted from a higher to a lower classification with reduction in pay. However tendencies of the evidence show that an effort was made to give promotional examinations in all cases where there was a promotion from one classification to a higher classification. There was no notation beside Merrill's name that his promotion was provisional or temporary or that Merrill was acting under a temporary, provisional assignment.

The above plan became effective November 1, 1941. From that date until the return of Byrum from military leave and Byrum's reinstatement as Superintendent on July 22, 1947, payroll sheets of The Street and Garbage Department of the city were submitted twice a month by the city to the Personnel Board pursuant to § 29 of the Civil Service Act, § 156, Title 12, Code of 1940, and pursuant to Rule 14 of the Civil Service Board. Accordingly on 137 occasions payroll sheets of the Street and Garbage Department were submitted by the city to the Personnel Board and were approved by the board of directors. Each of these 137 sheets carried Lem D. Merrill as Superintendent of Streets and Garbage and each was signed by him as "Department Head."

On March 23, 1944, the Personnel Board notified all department heads and the appointing authorities that it had adopted a "change in policy with regard to entrance and promotional examinations" and "because of the critical shortage of competent applicants" was discontinuing promotional examinations. However the board stated that promotional examinations would be held "upon the request of appointing authorities provided all persons eligible to compete are available to take the examination." The board suspended all examinations from that time until after the war ended. During the period from July 15, 1935, until July 22, 1947, when Byrum was reinstated to the position of Superintendent of Streets and Garbage, Merrill, Waggoner, Branyon and Johnson were employed continuously in the street department and were available to take any examinations deemed necessary. There was no such examination however. Nor was there any suggestion or offer of such examination. Upon Byrum's reinstatement to the position of Superintendent of Streets and Garbage on July 22, 1947 Merrill held the position

of District Supervisor and his salary was reduced from $335 per month to $275 per month.

On February 1, 1948 the position of Superintendent of Streets and Garbage was vacated by Byrum. During the period from July 22, 1947 until February 1, 1948 Byrum discharged none of the duties of Superintendent. These duties during this period were discharged by Merrill with the knowledge of the Personnel Board and without any objection by the Board.

On February 24, 1948 the Personnel Board refused to approve the action of the city in promoting Merrill to the position of Superintendent of Streets and Garbage. Between October 20, 1941 and November, 1947 the Board never requested an examination for the position of Superintendent of Streets. During the period beginning January 1, 1939 until after the decree of the lower court in this cause the Personnel Board promoted various employees working for and in the office of the Board without any promotional or competitive examination.

It is agreed by all parties that Merrill's work as Superintendent of Streets and Garbage has been outstanding, his efficiency rating the highest and that he held seniority over all district supervisors. The parties stipulated that all legal and equitable rights, defenses and claims of Merrill and all other parties were to be considered.

During the entire period Byrum was absent on military leave each of the foregoing district supervisors had equal rights under the civil service statute and the civil service board rules and regulations to seek promotion to the higher position and classification of Street Superintendent, in the event said position became vacant, by promotion based upon merit, competition or superior classification, as required by the civil service law. The efficiency ratings of the four district supervisors, Merrill, Johnson, Waggoner and Branyon as fixed under Civil Service Rules and Regulations was from June 30, 1939 to December 19, 1949 as follows: "Merrill's from 99 to 100; Mr. Johnson's 96 to 97; Mr. Waggoner 96 to 97, and Mr. Branyon's 86 to 97."

During the time Byrum was absent on military leave, Commissioner Morgan requested the Personnel Board to permit Merrill to perform the duties of Street Superintendent and to receive the salary fixed for the person occupying that position. The Personnel Board agreed to do this and in order to reconcile his rate of pay with the duties he was performing, Mr. Merrill was carried on the pay roll of the City of Birmingham as Street Superintendent. Prior to the time Byrum was granted military leave he had always been carried on the city pay roll as Street Superintendent and was so certified by Commissioner Morgan and during the period when Byrum was was absent on military leave he was shown on the pay rolls to be "Superintendent of Streets and Garbage 15 AWL" and was "so certified by Commissioner Morgan and Mr. Merrill."

There is nothing in the record to show that Byrum was ever relieved of his position which he had held under civil service rules and regulations as Street Superintendent. Although absent with leave he still held that position although his duties were temporarily performed by another. Upon Byrum's return from military duties he took over the duties of Superintendent and was continued on the pay rolls as Street Superintendent and Merrill returned to his position as District Supervisor. Byrum returned from military duty on July 22, 1947 and thereupon reassumed his "said position as Superintendent of Streets and Garbage." On August 12, 1947 the Commissioners of the City of Birmingham passed a resolution reinstating Byrum in said position as Active Superintendent of Streets and Garbage as of July 22, 1947. From July 22, 1947 to February 1, 1948 Byrum was certified as Superintendent of Streets and Garbage on the pay rolls and drew the salary of street superintendent. During this period Merrill worked for the city as District Supervisor and was so certified on the pay rolls. On February 1, 1948 Byrum was appointed to the position of Chairman of the Board of Adjustment and Ex Officio Technical Advisor to the Birmingham Planning Board.

The City Commission of Birmingham on February 24, 1948 passed the following resolution: "Be it resolved by the Commission of the City of Birmingham that Lem

Merrill be and he is hereby promoted from the position of District Supervisor, Street and Garbage Department, to the position of Superintendent of Streets and Garbage, Street and Garbage Department, at the appropriate current salary applicable to such position, to-wit, $365. per month."

The Personnel Board on February 25, 1948 declined to concur in the foregoing action of the City Commission and refused to fill the vacancy existing in that position without a competitive promotional examination in which the four supervisors namely Merrill, Johnson, Branyon and Waggoner had an opportunity to participate. Following this refusal on the part of the Civil Service Board to recognize the action of the City Commission with reference to the promotion of Merrill from Supervisor to Street Superintendent and because of the insistence of the Personnel Board that the Civil Service law and rules and regulations pertaining thereto be followed and that a Street Superintendent be selected from the four eligible supervisors above mentioned and that promotion to the vacant position be based upon merit, competition and superior classification as required by the Civil Service Act, the petitioner filed this action to have the court declare that Merrill had been promoted to the position of Street Superintendent without the necessity of a competitive examination.

Referring in greater detail to the petition filed in the lower court, the declarations sought therein may be stated in effect as follows. (1) That Lem D. Merrill was promoted from Supervisor to Street Superintendent by virtue of the adoption by the City Commission and Personnel Board of Jefferson County on October 20, 1941, of a Position-Classification or Pay Plan for Classified Service of Birmingham recommended by Public Administration Service (PAS). (2) Since Lem D. Merrill was given the title and salary of Street Superintendent under the foregoing Position-Classification and Pay Plan while George R. Byrum, Jr. was absent on military leave, that Lem D. Merrill was thereby given permanent tenure to the office of Superintendent of Streets and Garbage. (3) That Rule 9.8(B) as amended of the Personnel Board of Jefferson County gave Lem D. Merrill the position of Superintendent of Streets and Garbage as against all persons except George D. Byrum, Jr. (4) That the Personnel Board is estopped to deny that Lem D. Merrill is now entitled to hold the position of Superintendent of Streets and Garbage even though he has never been elevated to the position by promotion based upon merit, competition and superior qualifications. (5) That Lem D. Merrill is entitled to the pay of and salary of $365, the salary allocated to the position of Superintendent of Streets and Garbage of the City of Birmingham.

In the Street and Garbage Department of the City of Birmingham there are four positions designated as District Supervisors. In 1934 and 1935 when the sequence of events began which resulted in this litigation these four positions of District Supervisor were held by Lem D. Merrill, J. T. Waggoner, John Branyon and S. T. Johnson. Above these positions is the position of Superintendent of Streets and Garbage held by George R. Byrum, Jr. As shown in the statement of facts hereinabove set forth Lem D. Merrill performed the duties and received the salary for a considerable period of time which are connected with the position of Superintendent of Streets. Without question he displayed outstanding ability in the performance of these duties but the City Commissioners wished to elevate him to the position of Superintendent of Streets and Garbage without examination which J. T. Waggoner, John Branyon and S. T. Johnson have been and are willing to take and which they insist should be taken by all of them including Lem D. Merrill. Without question upon the ratings based upon their respective records, J. T. Waggoner, John Branyon and S. T. Johnson are qualified and eligible to take the examination. All of this means that we must consider the provisions of the Civil Service or Merit System Act which concededly was enacted by the legislature for the security of the faithful officer or employee by giving him permanence of employment and to get away from the spoils system with the evils which inhere in such a system. City of Birmingham v. Wilkinson, 239 Ala. 199, 194 So. 548; Yielding et al. v. State ex. rel. Wilkinson, 232 Ala. 292, 167 So. 580.

Section 24 of the Civil Service Statute, General Acts of 1935, p. 691, as amended by General Acts of 1939, p. 309 and p. 542, Blue Book p. 46, § 152, Title 12, Code of 1940, governs promotions. Effective March 1, 1940 the Personnel Board of Jefferson County, Alabama, adopted certain rules and regulations designed to express the intent of the statute in simple, non-technical language. These rules and regulations are contained in a pamphlet known as the Blue Book.

Section 25, Blue Book p. 48, § 153, Title 12, Code of 1940, deals primarily with transfers and reinstatements.

Section 24 provides that within the discretion of the Director of Personnel vacancies in positions shall be filled, in so far as practicable, by promotion and that "Promotions shall be based upon merit and competition and upon the superior qualifications of the person promoted as shown by his records of efficiency."

Section 25 provides that "An appointing authority may, at any time, assign a classified employee under his jurisdiction from one position to another in the same class."

Section 25 further provides that any classified employee, holding a permanent status, "may be transferred from one department to a position in the same class in another department * * * provided that the director has authorized the transfer and has received the consent of both appointing authorities concerned."

Section 25 further provides that no promotion, transfer or reinstatement shall be made from a position in one class to a position in another class nor shall a person be transferred to or reinstated in a position to which there is required by the law or the rules and regulations of the Board, "an examination involving essential tests or qualifications different from or higher than those required for original entrance to the position held by such person except that such person takes and successfully passes such examinations as are prescribed by the director and approved by the board." ■■ We think it clear that under the foregoing an appointing authority has the power generally to transfer an employee from one position to another position in the same class. An employee may be trans-

ferred from a position in one department to a position in another department in the same class if authorized by the director and consented to by the appointing authorities. No examination for transfers of this character is required either by the law or by the rules of the board. However, the transfers here referred to are not promotions. A transfer which amounts to a promotion must be based upon competition. A promotion is defined by the rules of the Board as "An advancement from one class to another class with increased duties and/or responsibilities, for which a higher rate of pay is prescribed." There is no doubt that no transfer by way of promotion as here defined can be legally made unless based upon "competition, merit and superior qualifications" and "by the successful passing of such examinations as may be prescribed" by the director and approved by the board.

It should be added that a promotion from one position to another position under the Civil Service or Merit System Statute also involves the fixation of a salary at an amount appropriate to the higher position, induction into the higher position as well as removal from the former subordinate position. McArdle v. City of Chicago, 172 Ill.App. 142; O'Malley v. Board of Education, 160 App.Div. 261, 145 N.Y.S. 645; Holleran v. Creelman, 148 App.Div. 121, 132 N.Y.S. 176.

To sum up the situation, Lem B. Merrill could not be elevated from District Supervisor to Street Superintendent except by promotion. Lem B. Merrill, however, insists that he has been promoted to the position of Superintendent of Streets and Garbage although he necessarily concedes that his promotion was not based upon competition.

■ There is one fact, however, to which we shall refer at greater length which seems to us to be indisputable and that is that there was never a vacancy in the position of Superintendent of Streets and Garbage for the City of Birmingham from the time George Byrum, Jr., became Superintendent until February 1, 1948, when Byrum was named Chairman of the Board of Adjustment and Ex Officio Technical Adviser to the Birmingham Plan-

ning Board. Throughout that entire period he held tenure as superintendent though he was absent with leave in the Military Service of the United States from June 19, 1941 until July 22, 1947, when he returned to duty. It is obvious if there was no vacancy in the office held by Byrum there could be no promotion to that office of Merrill so as to give Merrill permanent tenure of that office. It is argued that Merrill held permanent tenure except as to Byrum. Permanent tenure is not compatible with such an exception.

But assuming for the sake of argument that there was a vacancy in the position of Superintendent of Streets and Garbage at any time prior to February 1, 1948, Merrill who held a position under the classified service as District Supervisor could not have been advanced to the position of Superintendent of Streets and Garbage or promoted from District Supervisor to Superintendent of Streets and Garbage without taking and successfully passing a competitive examination prescribed by the Director and approved by the Board. Such a promotion without such an examination would be directly contrary to the provisions of the Civil Service or Merit System Act and Rule 10 of the Board, because the position of Superintendent of Streets and Garbage carried a higher rate of pay and increased duties and responsibilities.

It seems to us inescapable that Byrum's tenure of the position of Superintendent of Streets and Garbage while he was absent on war leave could not have the effect of doing more than temporarily to assign to Merrill the duties of Street Superintendent. Well considered authorities hold that a temporary assignment cannot ripen into a permanent appointment. In Howe v. Civil Service Commission of City of Bridgeport, 128 Conn. 35, 20 A.2d 397, 399, the Supreme Court of Connecticut states the rule as follows: "The overwhelming weight of authority is that under the circumstances of this case a temporary appointment never ripens into a permanent appointment, nor does mere occupancy of a temporary position beyond the time limited by law result in permanent tenure. * * * 'Any method which results in improperly placing in permanent posi-

tions those who obtain temporary employment is a reversion to the rightly condemned spoils system and is destructive of much that has been accomplished in the way of civil service reform.' * * * See, also, Koso v. Greene, 260 N.Y. 491, 184 N.E. 65, to the effect that while a temporary appointment may on occasion be succeeded by a permanent appointment, that may only be by virtue of examination and eligibility under the civil service laws, and not by reason of any ripening of temporary or provisional appointment into permanent appointment. * * * The plaintiff seeks to distinguish these and other like cases, upon the ground that the civil service law here in question contains no provision that all appointments in the classified service must be made only after competitive examinations. While the law does not in terms so state, it does provide that when a position in the classified service shall become vacant the appointing authority, if it shall desire to fill the vacancy, shall proceed in accordance with the terms of the act. There is no question as to the legislative intent that no position in the classified service can be filled except in accordance with those terms, and these require public competitive tests."

In Reading et al. v. Maxwell, 46 Ariz. 500, 52 P.2d 1155, 1157, the Supreme Court of Arizona states the rule in the following language.

"Granting that the city manager had the absolute power to make plaintiff's appointment permanent, it is clear that he did not intend such appointment to be permanent. Temporary appointments do not ripen into permanent appointments. Darling v. Maquire, 70 Misc. 597, 129 N.Y.S. 385.

"In State v. City of Seattle, 134 Wash. 360, 235 P. 968, 970, employees of the city of Seattle made the same contention, that is, that, while they may have been given temporary employment, such employment, by virtue of an amendment of the civil serv-ive regulations, became permanent. The court said: 'Such construction would evade the very objects of the civil service regulations. If they remained on the employment roll after the 60-day period had expired, they simply remained by sufferance, and to construe them as permanent employees

would be to violate the express provisions of the charter and disregard the Civil Service law.' "

■ But it is insisted that Merrill was promoted to the position of Superintendent of Streets and Garbage on Nov. 1, 1941. It is argued that while there was no competitive test nor a successful passing of examination prescribed by the Director and approved by the Board, under the rules, regulations and practices of the Personnel Board, Merrill was so promoted. We cannot agree. Any power that the Personnel Board might have to make rules and regulations necessarily is conferred by the statute upon the Personnel Board and any rule, regulation or practice which infringes on the statute either expressly or by implication must be pronounced void. Heck, State Comptroller v. Hall et al., 238 Ala. 274, 190 So. 280; Franklin v. State ex rel. Alabama State Milk Control Board, 232 Ala. 637, 169 So. 295; Railroad Commission of Alabama v. Alabama Northern Ry. Co., 182 Ala. 357, 62 So. 749; State ex rel. Bond v. State Board of Medical Examiners, 209 Ala. 9, 95 So. 295. We must take the statute as it is. Under the statute there is no authority by which any employee in the classified service can be promoted solely upon merit or upon his superior qualifications as shown by his record of efficiency. Under section 24, § 152, Title 12, Code of 1940, the Personnel Director was authorized to fill a vacancy in the position of Superintendent of Streets and Garbage, if he deemed it practicable to do so, by promotion of one of the four district supervisors. This is what the Personnel Director has tried to do through competitive examination since a vacancy occurred in that position. But all promotions are required to be based upon competition and no promotion not based upon competition can be a valid promotion. There is no question of the competency of Lem D. Merrill to hold the position as Superintendent of Streets and Garbage but we are governed by the statute and to remove competition as a prerequisite of promotion would in effect emasculate the Civil Service or Merit System Law.

It is contended that the adoption on November 1, 1941 of the Position-Classification or Pay Plan recommended by Public Administration Service (PAS) by the Personnel Board and the City Commission gave Lem D. Merrill a permanent status as Superintendent of Streets and Garbage as effectively as if he had been duly appointed to that position in compliance with the Civil Service or Merit System Act. Section 7 of that act, Section 144, Title 12, Code of 1940, and Rule 11 of the Board are relied upon for this insistence.

Subsections (3) and (4) of section 7 of the Act, Section 144, Title 12, Code of 1940, and Rule 11 of the Board regulate the classification of positions under city or county authority with reference to duty and responsibility as well as to compensation. Authority to formulate a plan of classification is conferred by the statute upon the Personnel Director. Rule 11 provides for the adoption of such a plan and provides further that after a plan is adopted the appointing authority shall notify each employee as to "the class to which the position he holds has been allocated." If the appointing authority or any employee is dissatisfied with the plan of classification in so far as it affects him he may protest and is entitled to a public hearing.

But neither Section 7 of the statute nor Rule 11 of the Board is concerned with the question of promotions. Each deals with classifying positions and equalizing compensation among positions of similar importance. The rules of the Board define "classification" to be "the assigning of a position to the appropriate class in accordance with its duty, responsibility and authority." The fact that a classification plan recommended by PAS was adopted in October, 1941, has no more tendency to effect the promotion or demotion of employees than the adoption of such a plan formulated by the Personnel Director. In other words the statute and rule involved pertain to the classification of positions of employment and not to the advancement of employees from one position to a higher position with a higher rate of pay.

As we have pointed out no vacancy existed in the position of Superintendent of Streets and Garbage when the PAS classification became effective. George Byrum, Jr., was then such Street Superintendent,

absent with leave, and under Rule 9.8 he was entitled to resume that position when his leave expired. Under this rule the Board was powerless to promote Merrill to Superintendent of Streets and Garbage even by a competitive examination. Any attempt by the Board to advance Merrill to the position of Superintendent of Streets and Garbage without a competitive examination would have contravened § 24 of the statute even if there had been a vacancy in the position when the PAS plan became effective.

Rule 9.8 demanded that the position Byrum had earned under Civil Service Regulations and Practices be preserved for him while he served in the army. At the expiration of his leave he was entitled "to resume his position and his service." It was just and proper to compensate Merrill in the amount prescribed for the position to which he had been assigned so long as Byrum was on leave, but Merrill cannot be made Superintendent of Streets and Garbage by being named on the pay roll as such. The law could not be circumvented by the make up of the pay roll or any other record keeping device. It seems to us that the real intent of the Commission and the Personnel Board is revealed by the fact that while Byrum was absent on war leave he was carried on the pay rolls as "Street Superintendent, Absent with Leave."

We think the result is clear that Merrill never had "tenure of office" as Superintendent of Streets and Garbage. It is contended that he must have had a permanent appointment because there is no such thing as a "temporary appointment" in the act. We think it sufficient to say that there is nothing in the act which permits promotion by the adoption of a classification of position plan or by any other means or method not based upon merit and superior qualification plus competition. The law does not give authority to destroy the tenure of office of an employee absent with leave and in the military service by designating or appointing some other employee to take over his job. Yielding v. McCombs, 238 Ala. 635, 193 So. 169. It is argued that the Board was without authority to appoint Merrill temporarily to the position of Superintendent of Streets and Garbage because no authority to make temporary appointments is to be found in the statute.

This is beside the point. The controlling factor here is that it had no authority under the statute to appoint Merrill permanently to a job of higher classification than that of District Supervisor except on the basis of competition for this would offend the express provisions of the law.

■ It is very earnestly argued that under the facts and circumstances in this case the Personnel Board is estopped to deny Merrill's right to the position of Superintendent of Streets and Garbage. It is sufficient to say that the principle of estoppel applicable to individuals is not applicable to the State or its municipal subdivisions or to state created agencies. Such bodies cannot be estopped by doing that which they had no authority or right to do. Sidney Spitzer & Co. v. Monroe County, D.C., 274 F. 819. Persons dealing with agencies of government are presumed to know the legal limitations upon their power and cannot plead estoppel on the theory that they have been misled as to the extent of that power. City of Mobile v. Mobile Electric Co., 203 Ala. 574, 84 So. 816. No person can claim to have altered his position for the worse by acts or promises which the law warns him he must not depend upon. Whitfield v. Hatch, 235 Ala. 38, 177 So. 149.

In Howe v. Civil Service Commission of the City of Bridgeport, 128 Conn. 35, 20 A.2d 397, 399, the Supreme Court of Connecticut said: "The plaintiff's second claim requires but brief discussion. The contention is that the Civil Service Commission, by hearing the appeal, assumed the plaintiff was a permanent appointee, and was estopped from denying it. The record shows that the commission made no such assumption. In any event, it is elementary that the commission could not endow the plaintiff with permanency of tenure by its own action, in violation of law. * * *"

In summation we point to certain facts which appear to be indisputable as shown by the record. (1) George Byrum, Jr., was Superintendent of Streets and Garbage when called into the Military Service and throughout his stay in the armed forces he was carried on the records of the city and the Civil Service Board as Superintendent, Absent with Leave. (2) When George Byrum, Jr., was discharged from military

248

service he resumed his duties as Superintendent of Streets and Garbage and was carried on the records of the city and the board as such superintendent until February 1, 1948, when he was made Chairman of the Board of Adjustment and Ex Officio Technical Adviser to the Birmingham Planning Board, pursuant to the provisions of the Acts of 1947, p. 142, Code 1940, Tit. 62, § 330(40). (3) When George Byrum, Jr., resumed his position as Superintendent of Streets and Garbage upon the expiration of his military service, Mr. Merrill resumed his position as District Supervisor and has since that time been carried on the records of the Civil Service Board as Supervisor, even though the City Commission passed a resolution attempting to promote him to Superintendent of Streets and Garbage after George Byrum, Jr., took the position with the Planning Board. (4) No effort has ever been made by Lem D. Merrill or by the City Commission to effect his promotion from District Supervisor to Superintendent of Streets and Garbage by the successful passing of a promotional examination based upon competition.

George R. Byrum, Jr., reassumed the position of Superintendent of Streets and Garbage on July 22, 1947, prior to the adoption of the Act of August 12, 1947. General Acts of 1947, p. 142. The act amends the original act by providing for promotions in certain instances without competition. The act cannot aid the contention that Lem D. Merrill has been promoted to the position of Superintendent of Streets and Garbage, but it does provide that under certain conditions, as set forth in the act, the Personnel Board can suspend competition. It is sufficient to say that the Personnel Board has not considered it "desirable for the best interest of the service to suspend competition."

We have given this case our careful consideration with the result that we think that the judgment of the lower court should be affirmed.

Affirmed.

BROWN, FOSTER and LAWSON, JJ., concur.