This appeal comes to us from the Circuit Court for Walker County, Alabama. The action was brought by, or in the name of, eleven individuals (the O'Rear group) who are residents of the City of Jasper, seeking first a temporary restraining order, then a preliminary injunction and permanent injunction, to prohibit Eula Mae Martin (Mrs. Martin) from constructing a multi-family improvement on her property in Jasper. From the trial court order granting the TRO, preliminary injunction and permanent injunction, Mrs. Martin appeals.
Several issues are raised by the parties, but we find one issue dispositive of the appeal. The dispositive issue is whether, under the facts of this case, the amendment to the zoning ordinance of the City of Jasper is arbitrary and unreasonable, rendering it unenforceable against the defendant. We hold that it is, and reverse the decision of the lower court.
The facts of the case are as follows:
On September 22, 1980, Mrs. Martin purchased the subject property, which was in a district of approximately twenty-four blocks that had been zoned R-4 residential for some twenty-five years. Mrs. Martin was a resident of this district, which contained structures of a general mixture of single family, apartment, and business usage, all permissible in an R-4 district. Many structures in the district which were originally single family dwellings had been remodeled into apartment units or businesses, and in other instances new apartment complexes or commercial buildings had been erected.
The day after purchasing the subject property, Mrs. Martin obtained a building permit for the construction of a seven unit condominium. She then proceeded with necessary excavation of the property and made financing arrangements.
On October 16, 1980, the O'Rear group appeared before the Planning Commission of the City of Jasper and petitioned that the block containing the subject property be rezoned from R-4 to R-2, permitting single *Page 830 
family dwellings only. The Planning Commission suggested that the area be enlarged to include six full blocks and portions of six other blocks, and made a recommendation to the Board of Commissioners of the City of Jasper that the area be rezoned R-2. At that time there were numerous apartment units, business houses, and boarding houses within the area.
On October 21, the Board of Commissioners, acting on the request by the O'Rear group, authorized the publication of notice that on November 4, 1980, it would hold a hearing to consider the proposed rezoning. On October 28 the O'Rear group filed this action, and on that day, without hearing, the trial court issued a TRO restraining Mrs. Martin from proceeding with her construction. On November 4, 1980, the Board of Commissioners, over Mrs. Martin's objection, created the new R-2 district requested by the O'Rear group. A hearing was held on November 5, at which the trial court found that the Board had changed the zoning of Mrs. Martin's property from R-4 to R-2 and that such change was valid. Based on these findings, the court preliminarily enjoined her from constructing any improvements on the property inconsistent with the new zoning amendment. A hearing on the permanent injunction was set for January 30, 1981.
Prior to the date of the hearing on the permanent injunction Mrs. Martin filed a suit seeking to have the rezoning ordinance struck down on procedural grounds. Eventually, she was successful and that ordinance was declared void, but on February 24, 1981, the Board adopted, with correct procedure, a new rezoning ordinance identical to the void one. During this time the hearing on the permanent injunction was continued three times, finally coming before the court March 25, 1981. During all of this time the preliminary injunction against Mrs. Martin continued in effect. On March 25, the trial court, on the basis of the rezoning amendment of February 24, 1981, permanently enjoined Mrs. Martin from building an apartment or condominium complex on the subject property.
Come v. Chancy, 289 Ala. 555, 269 So.2d 88 (1972), states:
 [T]he ultimate criteri[on] in determining the validity of zoning ordinances, and amendments thereto, is whether the ordinance creates zones in such manner that the classifications are consistent with the land use pattern of the area, and bear a substantial relationship to the public health, safety, morals, and general welfare. The size and location of the property would necessarily enter into a determination of this question, which is primarily for the governing body of a political subdivision whose conclusions in the premises should not be judicially disturbed unless [they] be arbitrary and capricious, and therefore palpably wrong.
In applying the above-quoted test to the facts of the case before us, we conclude that the zoning ordinance amendment upon which the injunction against Mrs. Martin was based is arbitrary and capricious, and the trial court was palpably wrong in concluding otherwise. A similar fact situation arising in Alabama was dealt with recently by the United States Court of Appeals, Fifth Circuit. Wheeler v. City of Pleasant Grove,664 F.2d 99 (5th Cir. 1981). In that case, plaintiffs were granted a permit under the existing zoning ordinance to build an apartment complex, and began preparatory work on the project. Then, as a result of citizen resistance to the proposed complex, a new ordinance was passed which forbade the construction of new apartments. The city then prohibited the plaintiffs from proceeding with the construction. The lower court held that the implementation of the new ordinance was arbitrary and capricious, and was specifically intended to prevent the plaintiffs from exercising their building permit. In affirming the lower court, the Court of Appeals held the enactment of the new ordinance to be "a bald attempt to revoke an already authorized building permit." (664 F.2d at 100). That court held further:
 [T]he city's purpose in enacting the measure was not rational. A developer has its right to be free of arbitrary or irrational *Page 831 
zoning standards. Arlington Heights v. Metropolitan Housing Development, 429 U.S. 252, 263, 97 S.Ct. 555, 562, 50 L.Ed.2d 450 (1977). Additionally, if a zoning ordinance is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare," it must be struck down, Euclid v. Ambler Realty Co., 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926).
From the record before us, it is clear that the zoning amendment passed by the City of Jasper was instigated by neighboring landowners who opposed Mrs. Martin's proposed building project. These same landowners were successful in obtaining a TRO and preliminary injunction preventing Mrs. Martin from actual construction for over four months, during which time there was no valid ordinance which such construction would have violated. When a procedurally sound ordinance was finally passed, the permanent injunction was issued.
Exhibits entered into evidence show clearly that where the original R-4 district had been a transitional zone between B-2 (general business) and R-2 (single-family residential) zones, the new R-2 district creates an island restricted to single family dwellings, bordered on two sides by areas zoned for business (B-2) and on two sides by areas allowing multi-family dwellings (R-4). On one side there is a strip only one block long remaining zoned R-4, separating the new R-2 district from a pre-existing R-2 district. Also, there is evidence that a great many pre-existing structures within the new district were rendered non-conforming by the change in zoning classification. It is clear from this evidence that the new classification is not consistent with the land use pattern of the area. The attempts by the plaintiffs to show a substantial relationship of the zoning amendment to public health, safety, morals and general welfare amounted to speculative testimony by the plaintiffs that a seven-unit complex might cause traffic problems or parking problems, and general overcrowding of an old, quiet neighborhood. The plaintiffs introduced no documentary studies or expert witnesses to indicate that there was any factual basis to these fears. The mayor testified that to his knowledge no studies were made as to the effect on traffic, traffic patterns, or the general safety and welfare of the community by the rezoning of the property. The Chairman of the Planning Commission testified that in his opinion the change of zoning would in no way affect the public safety, health or morals of the community, and that the Planning Commission had recommended the change in zoning simply to satisfy Mr. O'Rear.
As often stated by this Court, the decree of a trial court in a case presented ore tenus carries with it a presumption of correctness and will not be disturbed unless palpably wrong.Farm Country Homes, Inc. v. Rigsby, 404 So.2d 573 (Ala. 1981). In reviewing the record of this case, however, we find that this presumption of correctness has been overcome, and we reverse and remand to the lower court for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
MADDOX, FAULKNER, ALMON, EMBRY and ADAMS, JJ., concur.