693 So.2d 465 (1996)
Ex parte CITY OF JACKSONVILLE.
(Re Anthony W. COUCH v. CITY OF JACKSONVILLE).
1950751.
Supreme Court of Alabama.
December 6, 1996.
Rehearing Denied February 21, 1997.
O. Stanley Thornton of Wooten, Thornton, Carpenter, O'Brien, Lazenby & Lawrence, Talladega, for Petitioner.
Douglas Corretti and Mary Douglas Hawkins of Corretti, Newsom, Cleveland, Hawkins & Cleveland, Birmingham, for Respondent.
MADDOX, Justice.
The Jacksonville City Council, acting upon a recommendation by the Planning Commission, adopted an ordinance that rezoned a 200-acre tract of land from an R-2 classification, which permits multi-family dwellings, to R-1, which restricts use to single-family dwellings. The area rezoned included a 6.2-acre tract owned by Anthony W. Couch.
Couch sued the City of Jacksonville, asking the trial court to declare that the City's action was arbitrary and capricious and constituted an unconstitutional taking of his property. The court heard the case without a jury. After Couch had presented his evidence, the court granted the City's Rule 41(b), A.R.Civ.P., motion to dismiss the action on the ground that Couch had failed to *466 present sufficient evidence to show his entitlement to any relief.
Couch appealed to this Court; we transferred the appeal to the Court of Civil Appeals, as provided in § 12-2-7(6), Ala.Code 1975. The Court of Civil Appeals reversed and remanded, holding that the judgment of the trial court was "palpably wrong in finding that Couch had failed to prove that the city's actions in downzoning his property were arbitrary and capricious" and that "[t]he city failed to establish a substantial relationship to a legitimate governmental purpose in downzoning Couch's property." Couch v. City of Jacksonville, 693 So.2d 462, 464 (Ala. Civ.App.1995). We disagree with the Court of Civil Appeals and hold that the trial court did not err in dismissing Couch's claim.

Facts
The 200 acres in question was zoned R-2 when the City of Jacksonville adopted a comprehensive zoning plan in 1954. Couch bought 6.2 acres of that property on February 28, 1992, and made plans to develop a complex that would consist of two-family apartments, mainly for the purpose of rental profits. When Couch purchased the property, it was zoned R-2, a zoning that would permit such a development. Additionally, Couch presented evidence that before he purchased it he visited the City Planning Commission to inquire about the current zoning of this property and that he purchased the property based upon what he was told.
Upon learning of Couch's intentions to develop the property, residents who owned single-family dwellings located adjacent to Couch's property asked the Planning Commission to recommend to the City Council that an area of approximately 10 acres, including Couch's property, be rezoned from R-2 to R-1. The Planning Commission held a public hearing on April 21, 1992; Couch was present at this meeting, along with approximately 38 residents from the affected area. Couch was the only one in attendance who spoke in opposition to the proposal. The Commission postponed its decision until it held a second meeting scheduled for May 19, 1992. In the interim, however, the Commission instituted is own plan, which proposed to rezone the 200-acre tract, including Couch's land, from R-2 to R-1. At the second public hearing, on May 19, 1992, 45 residents of the affected area appeared in favor of the new Commission plan, and the only opposition to the plan was voiced by Couch. At the conclusion of the hearing, the Planning Commission rejected the original application and submitted its new rezoning plan as its recommendation to the City Council.
The City Council, upon receiving the Planning Commission's recommendation, held a public hearing on June 22, 1992. Thirty-nine residents who favored the rezoning plan attended. Couch also attended the hearing, along with his attorney. After this hearing, the City Council adopted Ordinance No. 305, which rezoned the approximately 200-acre tract from R-2 to R-1, including Couch's 6.2 acres.
Couch sought a judgment declaring the ordinance invalid and unenforceable. After hearing ore tenus testimony of six witnesses on behalf of Couch, including an expert in urban planning; Couch himself; a city employee; a friend of Couch; a building inspector and zoning administrator for the city; and a bank employee, who testified that the bank would have lent Couch the money to build the complex, the trial court granted the City's motion to dismiss Couch's action.

Issue
The sole issue is whether the trial court's judgment upholding the rezoning of the property was palpably wrong, as the Court of Civil Appeals held.

Analysis
In considering the correctness of the judgment of the trial court, we apply the rule that in a nonjury case the trial court is the ultimate trier of fact and is free to weigh the evidence and the credibility of the witnesses; that the findings of fact made by the trial court are presumed to be correct, if supported by credible evidence; and that a judgment based on those findings will not be set aside unless it is clearly erroneous or palpably wrong or unjust. Hayden v. Bruno's, *467 Inc., 588 So.2d 874, 875 (Ala.1991); see also O'Brien v. Westinghouse Electric Corp., 293 F.2d 1 (3d Cir.1961); Feaster v. American Liberty Insurance Co., 410 So.2d 399 (Ala. 1982).
This Court, in Homewood Citizens Association v. City of Homewood, 548 So.2d 142 (Ala.1989), discussed the law applicable to a court's review of a city's action in zoning cases. It stated that "[w]hen a municipal body acts either to adopt or to amend a zoning ordinance, it acts in a legislative capacity and the scope of judicial review of such action is quite restricted." 548 So.2d at 143. The restrictions on this Court's review of the validity of a zoning ordinance have been explained as follows:
"`Zoning is a legislative matter, and, as a general proposition, the exercise of the zoning power should not be subjected to judicial interference unless clearly necessary. In enacting or amending zoning legislation, the local authorities are vested with broad discretion, and, in cases where the validity of a zoning ordinance is fairly debatable, the court cannot substitute its judgment for that of the legislative authority. If there is a rational and justifiable basis for the enactment and it does not violate any state statute or positive constitutional guaranty, the wisdom of the zoning regulation is a matter exclusively for legislative determination.
"In accordance with these principles, it has been stated that the courts should not interfere with the exercise of the zoning power and hold a zoning enactment invalid, unless the enactment, in whole or in relation to any particular property, is shown to be clearly arbitrary, capricious, or unreasonable, having no substantial relation to the public health, safety, or welfare, or is plainly contrary to the zoning laws.'"
Homewood Citizens Association, 548 So.2d at 143 (quoting 82 Am.Jur.2d Zoning and Planning § 338 (1976)). The Court further stated that "[t]he burden is upon the party seeking relief from an ordinance to show that the ordinance was not a fairly debatable issue before the municipal governing body." 548 So.2d at 144.
The record contains credible evidence to support the trial court's holding that the rezoning was not arbitrary and capricious. The original R-2 zoning was made in 1954. Kenneth Groves, an urban planner from Birmingham, who was qualified as an expert, testified on cross-examination that there were no properties in the area in question that were being used as R-2; that "this is a developing area of single family home sites." (TR. 45-46.) He recognized that the area had been rapidly developing as a neighborhood of single-family homes since 1984 and that more than 100 new homes had been built in the area during that time. Before this development, the area was vacant and was mainly used for agricultural purposes. (TR. 68.) Groves further stated that changing use of an area is a legitimate criterion for a city to use in deciding whether to rezone. (TR. 68.)
Couch argues that because he went to the zoning authority before he bought the land and was told that the land was zoned R-2, the City should be estopped from changing the zoning of this particular land; he argues that citizens should be able to rely on current zoning laws. In effect, he is arguing the doctrine of equitable estoppel. However, this Court has held that "[t]he doctrine of equitable estoppel, as a general rule, is not applicable to the state, to municipal subdivisions, or to state-created agencies," because "`[p]persons dealing with agencies of government are presumed to know the legal limitations upon their power and cannot plead estoppel on the theory that they have been misled as to the extent of that power.'" Marsh v. Birmingham Board of Education, 349 So.2d 34, 36 (Ala.1977), quoting City of Birmingham v. Lee, 254 Ala. 237, 247, 48 So.2d 47, 55-56 (1950).
Couch testified that he paid $60,000 for the 6.2 acres, on which was located a single-family dwelling. Couch never developed the property, but he maintained that the value had decreased since the zoning change. He claimed that his property is now worth around $15,000, that he had spent some $20,000 dollars in preparation for developing the property, and that he had lost as much as $6,400 a month in future profits with the loss *468 of the opportunity to develop. Couch, however, when cross-examined, testified that adjacent property now zoned R-1 is selling for $25,500 an acre. Furthermore, Donnie Tucker, a friend of Couch's, testified that 1 1/2 acres zoned R-2 near Couch's property had been sold for $16,000.
Couch supported his contention that the city should be estopped from changing the zoning of the property by introducing testimony indicating that the City had performed no studies and that in its minutes the City Council had stated no reasons for adopting the ordinance.
We are aware of no legal principle requiring a municipal governing body to give reasons in its minutes or to perform studies before adopting a zoning ordinance. Section 11-52-70, Ala.Code 1975 provides:
"Each municipal corporation in the state of Alabama may divide the territory within its corporate limits into business, industrial and residential zones or districts and may provide the kind, character and use of structures and improvements that may be erected or made within the several zones or districts established and may, from time to time, rearrange or alter the boundaries of such zones or districts and may also adopt such ordinances as are necessary to carry into effect and make effective the provisions of this article."
Section 11-52-76 provides:
"The legislative body of such municipality shall provide for the manner in which such regulations and restrictions and the boundaries of such districts shall be determined, established and enforced and from time to time amended, supplemented or changed and may adopt such ordinances as may be necessary to carry into effect and make effective the provisions of this article."
Furthermore, in Grand v. Jefferson County, 291 Ala. 29, 33, 277 So.2d 334 (1973), this Court stated, "We do not perceive that any requirement exists by reason of the statute which makes such studies mandatory."
Robert D. Hammond, employed with the Farmers & Merchants Bank in Anniston, testified that Couch had approached him for a loan to finance construction of a duplex on the property, but he admitted on cross-examination that no firm loan commitment was made.
The Court of Civil Appeals stated that this case was similar to Martin v. O'Rear, 423 So.2d 829 (Ala.1982). We believe it is distinguishable from Martin. In Martin the evidence showed that "the original R-4 district had been a transitional zone between B-2 (general business) and R-2 (single-family residential) zones, [and] the new R-2 district creates an island restricted to single family dwellings, bordered on two sides by areas zoned for business (B-2) and on two sides by areas allowing multi-family dwellings (R-4)." 423 So.2d at 831. The facts before us now are different from the facts of Martin. Couch's expert testified that the prevailing use of the land was for single-family residences (R-1) and that no R-2 use was present. This present case presents no questions of transitional spot zoning or the creation of zoning islands. The trial judge could have concluded from the evidence presented that the City Council had rezoned the area to reflect the current use of the land. Clearly, Couch has not shown that the action of the City Council was arbitrary and capricious, which is the burden the law placed upon him. In fact, based on the testimony offered on behalf of Couch, the trial court could have concluded that the City Council, in rezoning the property to conform with its current use, acted to promote the health, safety, morals, and general welfare of the community.
Based on the foregoing, we reverse the judgment of the Court of Civil Appeals and remand the cause to that court for an order or proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and HOUSTON, KENNEDY, and BUTTS, JJ., concur.
ALMON, SHORES, and COOK, JJ., dissent.
COOK, Justice (dissenting).
*469 I agree with the decision and the reasoning expressed in the opinion of the Court of Civil Appeals; therefore, I respectfully dissent.
ALMON and SHORES, JJ., concur.