[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This matter comes before the Court on Raymond Bourque's and Muriel Jannell's (hereinafter "Plaintiffs") Motion for Summary Judgment and Declaratory Relief, seeking approval on an application filed on March 18, 1992, for the subdivision of property situated in the Town of Cumberland (hereinafter "Defendant"). Defendant objects to Plaintiffs' Motion for Summary Judgment and Declaratory Relief, and asks this Court to declare that Plaintiffs must comply with the Town of Cumberland's 2003 zoning and land subdivision regulations, which do not allow for the subdivision Plaintiffs are requesting.
 Background
The events leading up to this dispute span in excess of a seventeen year period, beginning in September 1987, when the Town of Cumberland Planning Board passed regulations concerning the subdivision of land The 1987 Subdivision Regulations stipulated that lot sizes applicable to subdivisions were 25,000 square feet and would be served by public water and sewer. That 1987 Ordinance provided an exemption as to those subdivision regulations which were filed prior to the enactment of the ordinance. The exemption reads as follows: "[a]ll lots of record and all subdivisions filed with the planning board as of September 28, 1987 shall be excepted."
In the late 1980s, members of the Town sought to increase the minimum lot requirement in Agricultural A and B zoning districts. After several attempts, in August, 1988, the electors of the Town of Cumberland initiated a voter referendum to amend the Cumberland Zoning Ordinance to require a minimum lot size of two acres or approximately 87,000 square feet for any lot in an Agricultural A or B zoning district. The Referendum was approved by the voters on November 8, 1988 and took effect upon passage.
On February 6, 1992, the 1988 Amendment was struck down by the Rhode Island Supreme Court because it was improperly enacted.L.A. Ray Realty v. Town Council of Cumberland, 603 A.2d 311, 314 (R.I. 1992). Thereafter, when the Town enacted the March 18, 1992 Ordinance, changing the minimum lot size for agricultural A and B zones to 2 acres, the Town fathers allowed "all sketch plans" submitted as of March 18, 1992 to be exempt from that ordinance. Thus, a window of opportunity was created for developers to submit applications for projects that met the 25,000 square foot requirement, during which time 38 applications were received by the Town of Cumberland Planning Board.
Among the 38 applications received was Plaintiffs' application, which is the subject of the present controversy. Plaintiffs' application, filed on March 18, 1992, sought to subdivide land located at Old Wrentham Road within the Town. At the time Plaintiffs filed their application, the property was zoned Residential AA. Under the applicable zoning ordinance in effect at the time of filing, the minimum lot sizes in Residential AA were 80,000 square feet if water and sewer were not available and 25,000 square feet if water and sewer were available. Plaintiffs' application was reviewed by the Cumberland Planning Board and pre-application approval was granted on June 16, 1992.
In 1994, the Town enacted a Comprehensive Zoning Amendment that would comport with the New Zoning Enabling Act. Section 9-13 of the 1994 Zoning Ordinance addresses the vested rights issue for those developers in the process of approval, and sets forth certain required time frames for applications upon approval.
On June 2, 2003, the Plaintiffs sent the Town Planning Department a preapplication plan for a continued application meeting, which was approved by the Planning Board on June 25, 2003. The Plaintiffs submitted their revised plans for Great Woods on October 7, 2003 and on October 28, 2003, the Planning Board accepted the plan submitted by the Plaintiffs. Thereafter, the Town changed its position and notified Plaintiffs that the application was not valid as previously declared.
On December 19, 2003, Plaintiffs filed a verified complaint against the Town of Cumberland seeking Declaratory Relief asserting that Plaintiffs' application remains valid, binding and in full force and effect, and that pursuit of the subdivision may be done under the zoning regulations at the time of the application filing. The matter is now before this Court on Plaintiffs' Motion for Summary Judgment and Declaratory Relief.
 Standard of Review
"Summary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings and other documentary matter . . . that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact." Palmisciano v. Burrillville Racing Association,603 A.2d 317, 320 (R.I. 1992) (citing Steinberg v. State,427 A.2d 338 (R.I. 1981); Ludwig v. Kowal, 419 A.2d 297 (R.I. 1980)); Super. Ct. R. Civ. P. 56(c). When the moving party sustains its burden "[t]he opposing parties will not be allowed to rely upon mere allegations or denials in their pleadings. Rather, by affidavits or otherwise, they have an affirmative duty to set forth specific facts showing that there is a genuine issue of material fact." Bourg v. Bristol Boat Co., 705 A.2d 969
(R.I. 1998) (citing St. Paul Fire Marine Insurance Co. v.Russo Brothers, Inc., 641 A.2d 1297, 1299 (R.I. 1994)).
During a summary judgment proceeding "the court does not pass upon the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." Palmisciano, 603 A.2d at 320 (citing Lennon v. MacGregor, 423 A.2d 820 (R.I. 1980)). Thus, the only task of a trial justice in ruling on a summary judgment motion is to determine whether there is a genuine issue concerning any material fact. Id. (citing Rhode IslandHospital Trust National Bank v. Boiteau, 376 A.2d 323 (R.I. 1977)). Therefore, "when an examination of the pleadings, affidavits, admissions, answers to interrogatories and other similar matters, viewed in the light most favorable to the party opposing the motion, reveals no such issue, the suit is ripe for summary judgment." Id. (Citations omitted).
Under the Uniform Declaratory Judgments Act, this Court has the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. G.L. 1956 §9-30-1. "This Court may also grant further affirmative relief based on the declaratory judgment `whenever necessary or proper' provided subsequent `supplementary proceedings' are brought pursuant thereto." Capital Properties, Inc. v. State,749 A.2d 1069, 1080 (R.I. 1999); (citing G.L. 1956 §§ 9-30-8 and 9-30-12
and Sousa v. Langlois, 97 R.I. 196, 196 A.2d 838 (1964)).
 Vested Rights
Plaintiffs contend that there is no genuine issue of material fact because their request for a subdivision was in accordance with the 1987 zoning regulations in effect at the time they submitted their pre-application in 1992. Plaintiffs further assert that their decision not to act on their pre-application again until 2003 is irrelevant because the 1987 regulations in effect in March 1992 did not provide any expiration date for proceeding with a pre-application plan. In support of their position, Plaintiffs note that their subdivision plan was granted approval on June 16, 1992 and once again in 2003, demonstrating that their application had not expired or terminated between 1992 and 2003.
Conversely, Defendant maintains that Plaintiffs' vested rights in their 1992 application were extinguished when Plaintiffs failed to proceed with their application in a reasonable amount of time. Although no time constraint was present in the 1987 regulations addressing the stage between pre-applications and preliminary plat plans, Defendant asserts that § 9-13 of the Town of Cumberland's 1994 Ordinance set forth a time requirement that Plaintiffs were required to follow thereafter. That section provides in pertinent part:
 "(b) Any application for development under this ordinance that is substantially complete prior to the enactment or amendment of this ordinance, shall be reviewed according to the regulations applicable in the zoning ordinance in force at the time the application was submitted. If such application is approved, the applicant must begin construction or exercise the right granted in the application if no construction is involved, not more than one year after the date of such approval. All construction must be completed not more than two years after the date of such approval, unless specifically set forth to the contrary in the original approval."
Additionally, Defendant contends that a provision in the 1987 regulations setting a time requirement between the preliminary plat stage and the final application stage substantiates their position that applicants were required to act within a reasonable amount of time in submitting a preliminary plat subsequent to pre-application approval. This Court disagrees.
Several courts have taken the position that a property owner's development rights must be based on the ordinance in effect at the time an application is filed. For example, in Allenbach v.City of Tukwila, 676 P.2d 473 (Wash. 1984), the Supreme Court of Washington stated that the landowner's development rights must be based on the ordinance in effect on the date his application was submitted, rather than on an ordinance that was passed but not yet effective. In Pure Oil v. City of Columbia, 173 S.E.2d 140, 143 (S.C. 1970), the Supreme Court of South Carolina took a similar position, declaring:
 "We see no reason to protect vested rights acquired after a permit is issued, and to deny such protection to similar rights acquired under an ordinance as it existed at the time a proper application for a permit is made. In both instances, the right protected is the same, that is, the good faith reliance by the owner on the right to use his property as permitted under the Zoning Ordinance in force at the time of the application for a permit."
Similarly, in Tantimonaco et ux. v. Zoning Board of Review ofthe Town of Johnston, 232 A.2d 385, 389 (R.I. 1967), the Rhode Island Supreme Court recited from 1 Yokley, Zoning Law andPractice (3d ed.), § 9-5, at 409, wherein the author states: `"Current trends in the decisions indicate that rights existing under an ordinance may not be swept aside by a subsequently enacted zoning ordinance, where, in reliance on the existing ordinance, expenses are incurred in preparing for the issuance of a permit."'
In the present case Plaintiffs acquired vested rights in their pre-application when it was approved in June 1992 in accordance with the Town's 1987 Subdivision Regulations. There was no timeframe in the 1987 regulations within which applicants were required to proceed subsequent to approval of their pre-applications. This Court rejects Defendant's position that the Town can now apply the time limits set forth in the 1994 Ordinance even though Plaintiffs' pre-application was submitted in accordance with the 1987 regulations. Moreover, Defendant's assertion that Plaintiffs had an affirmative duty to continue with their application within a reasonable time based on provisions in the 1987 regulations which set time limits for other procedures is unavailing. An affirmative duty to act within a certain amount of time is created when there is a time limitation within the applicable regulations or ordinance under which an application was filed. See 4 Rathkopf, The Law ofZoning and Planning, § 70:15 (2002). Because there was no time limit specified in the 1987 regulations with regard to how long the applicants had to proceed with their pre-application before it expired, Plaintiffs did not forfeit their right to an exemption from the minimum two acre lot requirement.
 Selective Enforcement
Plaintiffs next argue that the Board is practicing selective enforcement because it has allowed other applications that were submitted as of March 18, 1992 to move forward in accordance with the 1987 regulations regardless of when the applicants recommenced discussions with the Board regarding their plans. Plaintiffs point out that out of the 38 applications which were submitted as of March 18, 1992, all of the 14 applicants who have attempted to move forward with their projects thus far have been permitted to do so. Plaintiffs further point out that the last of these applications to be resubmitted in accordance with the 1987 regulations, prior to Plaintiffs', was resubmitted to the Board as late as 1999. Thus, it is Plaintiffs' contention that the Board's action represents arbitrary and capricious selective enforcement in violation of the equal protection clause.
While Defendant concedes that the other 14 applications were not subjected to the time limitations now being enforced against Plaintiffs' application, Defendant asserts that Plaintiffs do not have a right to benefits to which they are not legally entitled. Defendant maintains that the municipality's failure to enforce the time limits placed in the 1994 ordinance constitutes an ultra vires act and thus cannot be relied upon by Plaintiffs to establish an equal protection violation.
The United State Supreme Court has held that the equal protection clause gives rise to a cause of action "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village ofWillowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 1074, 145 L.Ed.2d 1060, 1063 (2000). The Court went on to state that the purpose behind the equal protection clause is to secure individuals against intentional and arbitrary discrimination, `"whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."' Id. at 564, 1075, 1063. (citing Sioux City Bridge Co. v. DakotaCounty, 260 U.S. 441, 445, 67 L.Ed. 340, 342, 43 S.Ct. 190, 191 (1923)) (quoting Sunday Lake Iron Co. v. Township ofWakefield, 247 U.S. 350, 352, 62 L.Ed. 1154, 1155-56, 38 S.Ct. 495 (1918)). Following this same analysis, the Supreme Court of Rhode Island in addressing a selective enforcement claim has sought to determine whether there is any rational basis behind a zoning board's decision to discern between two different applications, with respect to a specific ordinance. Mills RealtyAssociates et al. v. Robert Crowe et al., 841 A.2d 668 (R.I. 2004). Where the zoning board can supply rational reasons for its conclusion that the lot in question is not similarly situated to the other lots which were granted protection under a specific ordinance, the lot owner has not established a selective claim.See id.
Applying the above reasoning to the present case, this Court finds that the Board's sudden enforcement of a time limit on Plaintiffs' application is arbitrary and capricious and is an equal protection violation. Upon withdrawing the Plaintiffs' application in 2003, the Planning Board never provided any explanation for the withdrawal of Plaintiffs' application. Moreover, the Defendant has not established any basis for differentiating between the Plaintiffs' application and the previous 14 applications in applying the time limit specified in the 1994 ordinance.
 Equitable Estoppel
Finally, Plaintiffs contend that the doctrine of equitable estoppel precludes Defendant from denying Plaintiffs' pre-application, as Plaintiffs have expended substantial sums of money in reliance on the project going forward. Plaintiffs assert that they substantially relied on the vesting provision in the Town of Cumberland's 1994 Zoning Ordinance § 9-13(b), as well as the Town's consistent approval of the fourteen other subdivision pre-applications similar to that of Plaintiffs'. Thus, it is Plaintiffs' contention that they reasonably relied on the municipality's conduct in believing that their plan remained subject to the 1987 regulations. Alternatively, Defendant maintains that the doctrine of equitable estoppel does not apply in the instant case because Plaintiffs only filed a pre-application, which does not have the same effect as approval of a preliminary plat or final approval.
"A basic formulation of estoppel states that a local government exercising its zoning powers will be estopped when a property owner (1) relying in good faith, (2) upon some act or omission of the government, (3) has made such extensive obligations and incurred such extensive expenses that it would be highly inequitable and unjust to destroy the rights which the owner has ostensibly acquired." 4 Rathkopf, supra, § 65:29 (citing Heeter, Zoning Estoppel: Application of the Principles ofEquitable Estoppel Vested Rights to Zoning Disputes, 1971 Urb. L. Ann. 63, 66). Courts are in agreement that the property owner's reliance must be reasonable and justifiable in light of the government's conduct. See, e.g., LeDoux v. Kodiak IslandBorough, 827 P.2d 1121 (Alaska 1992); City of Sheridan v.Keen, 524 P.2d 1390, 1393 (Colo.App. 1974); Town of WestHartford v. Gelinas, 559 A.2d 1176 (Conn. App. Ct. 1989);American Nat. Bank Trust Co. of Chicago v. Village ofArlington Heights, 450 N.E.2d 898, 903 (Ill. 1st Dist. 1983);City of Concord v. Tompkins, 471 A.2d 1152 (N.H. 1984);Clackamas County v. Emmert, 513 P.2d 532 (Or. 1973). Thus, a property owner will generally be prevented from invoking the doctrine of equitable estoppel where the owner had actual or constructive knowledge of the municipality's zoning requirements and failed to abide by them. See, e.g., Ex parte City ofJacksonville, 693 So.2d 465 (Ala. 1996); Miller v. Board ofAdjustment of Town of Dewey Beach, 521 A.2d 642 (Del. Super. Ct. 1986); Corona Properties of Florida, Inc. v. Monroe County,485 So.2d 1314 (Fla. Dist. Ct. App.3d Dist. 1986); Hall v. Boardof Environmental Protection, 498 A.2d 260 (Me. 1985).
Here, Plaintiffs reasonably relied on the exemption in the Town's 1992 Ordinance and the Board's subsequent approval of their 1992 pre-application in incurring costs on their prospective project. Even if Defendant's contention that Plaintiffs should have acted within a certain timeframe after enactment of the 1994 Ordinance was correct, the Board's subsequent approval of the 14 other applications conveyed a contrary message. It is undisputed that the Board consistently applied the 1987 regulations to applications submitted as of March 18, 1992 without imposing any time limits as to when applicants were required to proceed. "Speaking in general terms, where assurances have been given, representations have been made, or a permit was issued within the general powers conferred upon a municipal officer, the claim of equitable estoppel will be sustained." Rathkopf, supra, § 65:31. Thus, this Court finds that after granting approval of the Plaintiffs' pre-application it would be inequitable for the Board to now be able to disallow Plaintiffs' application due to alleged time limitations when Plaintiffs were led to believe that the only time limitations to which they were subject were those stipulated in the 1987 regulations.
Additionally, this Court rejects Defendant's argument that this is not a detrimental reliance case because Plaintiffs only submitted a pre-application. While Defendant is correct that generally the sketch plan procedure is so informal that legal consequences will not result, where the sketch plan procedure in the relevant ordinance assumes more formal dimensions, approval of the plan can entitle the applicant to certain protections.See 5 Rathkopf, supra, § 91:4; Croft v. Board of Sup'rs ofMiddletown Tp., 464 A.2d 625 (Pa. 1983). Here, submission of the pre-application sketch plan was a mandatory phase in the three step procedure for obtaining final approval. During this stage the subdivider was required to submit a fully completed application, a minimum of twenty legible black line or blue line prints of the pre-application sketch plan, a proposed time schedule if the development of the subdivision was to proceed in stages, and any other required items specified in other sections of the 1987 regulations. The Planning Board then had the responsibility to review and discuss the pre-application plan and give a written statement of approval in principle, approval subject to modification, or disapproval. Reading the 1987 Ordinance as a whole, the pre-application is an integral and formal phase of the final approval process. Therefore, under the circumstances, Plaintiffs were not unreasonable in relying on the Board's approval of their preapplication, especially in light of the fact that the 1992 Ordinance provided that applicants who simply submitted their application as of March 18, 1992 were exempt from the two acre lot requirement.
Moreover, Defendant has not demonstrated that the Town has been adversely affected by the Plaintiffs' failure to act on their pre-application prior to 2003. Courts have repeatedly held that "a municipality is estopped from denying the validity of its own acts" Rathkopf, supra, § 65:29 (citing Klotz v. Board ofAdjustment of Borough of Englewood Cliffs, 217 A.2d 168, 170 (N.J. Super. Ct. Law Div. 1966); Greenhills Home Owners Corp. v.Village of Greenhills, 216 N.E.2d 403, 408 (Ohio 1966); GreatFalls Mfg. Co. v. Garland, 124 U.S. 581 (1888)). For example, inCom. Dept. of Environmental Resources v. Flyn, the Pennsylvania Supreme Court held that the Department of Environmental Resources was estopped from revoking a sewage permit which had been issued in violation of its own regulations where the landowner had acted in good faith reliance on the permit and had incurred substantial costs and there was no evidence of public or private rights being adversely affected by use of the permit. 344 A.2d 720 (Pa. 1975). Similarly, in the present case the equities weigh in favor of Plaintiffs. Although the private interests of those residing in Cumberland might be impacted by the Plaintiffs' subdivision, the Defendant has not shown that any such effect has been exacerbated by the Plaintiffs' decision to proceed in 2003 as opposed to 1994. Furthermore, it is apparent to this Court that Plaintiffs would incur serious losses if they were not allowed to proceed with their project at this time.
 Conclusion
For all the reasons stated above, this Court grants Plaintiffs' Motion for Summary Judgment and Declaratory Relief, allowing Plaintiffs to proceed with their subdivision in accordance with the lot requirements in effect at the time Plaintiffs submitted their application in 1992. The facts are clear and even when taken in the light most favorable to the Defendant, the Court is legally compelled to conclude that Plaintiffs' rights vested with submission of their application prior to the March 18, 1992 deadline.
With respect to the Plaintiffs' Motion for Declaratory Judgment, this equitable remedy permits the Court to declare the rights and status of the parties. While granting Plaintiffs' request as to lot size, this Court recognizes a strong public interest in other related concerns of the Defendant associated with well-conceived, orderly, and environmentally appropriate development of land Accordingly, this Court orders that Plaintiffs' subdivision shall, to the extent practicable, comply with all current subdivision regulations other than lot size.