LYONS, Justice.
Nathan Rodgers Construction, Inc. (“Rodgers”), petitioned this Court for a writ of certiorari seeking review of the Court of Civil Appeals’ no-opinion affir-mance of the Mobile Circuit Court’s judgment upholding the City of Saraland’s denial of Rodgers’s application for rezoning. See Nathan Rodgers Constr., Inc. v. City of Saraland (No. 2060803, January 18, 2008), — So.3d - (Ala.Civ.App.2008) (table). We granted the petition to consider Rodgers’s contention that the decision of the Court of Civil Appeals conflicts with Martin v. O’Rear, 423 So.2d 829 (Ala.1982). We affirm.
I. Facts and Procedural History
Rodgers is a real-estate development company that owns eight acres of property in the City of Saraland on which it wants to develop a subdivision consisting of patio homes. However, patio homes traditionally sit on lots with frontage of less than 100 feet and Rodgers’s property is in an area currently zoned R-l, which allows only *48 single-family homes on lots with frontage of 100 feet or more. Rodgers filed an application for rezoning with the Saraland Planning Commission requesting that its property be rezoned to R-1(A), which allows single-family homes on lots with less than 100 feet of frontage.
At the planning commission hearing on Rodgers’s application for rezoning, several residents expressed concern that the rezoning would create traffic and drainage problems in the surrounding areas, and the planning commission recommended that the Saraland City Council deny Rodgers’s application. The city council then held a public hearing on Rodgers’s application for rezoning. Several residents again expressed concern about potential traffic and drainage problems caused by the rezoning, and the city council denied Rodgers’s application for rezoning.
Rodgers sued Saraland, seeking a judgment declaring that Saraland’s zoning regulations and ordinances, under which the property is presently classified, are unconstitutional and otherwise invalid as applied to its property. Rodgers also sought in-junctive relief to reverse Saraland’s denial of the application for rezoning and asserted a claim under 42 U.S.C. § 1983 alleging that Saraland’s actions in denying its application for rezoning were discriminatory. After a bench trial in which, among others, a city councilman, a member of the planning commission, and a city councilman who also served on the planning commission testified, the trial court found in favor of Saraland on all counts. The trial court’s order stated:
“[Saraland] presented substantial evidence to the Court that its decision was based on legitimate police powers consideration, which was the City’s concern regarding increased traffic congestion on Celeste Road. While some aspects of ‘traffic engineering’ do require an expert witness in order to offer testimony to a court, [Saraland’s] witnesses were qualified, as lay witnesses and members of the City Council and long time residents of the City of Saraland, to testify as to their opinion regarding [the effect of Rodgers’s] proposed development on traffic on Celeste Road. The Court could accept or reject [Saraland’s] testimony regarding traffic congestion. The Court is not impressed by the testimony offered by [Rodgers] to counter [Saraland’s] traffic testimony.... Thus, the City Council’s decision to discourage increased automobile traffic by not rezoning [Rodgers’s] property is a valid exercise of the city’s police power as increased traffic can impact public safety. The Saraland City Council may not necessarily be correct in [its] assumptions about increased traffic but there is no evidence that [it] discriminated against the defendant or reached [its] decision based on an improper motive.
“Thus from hearing all the testimony and reviewing the applicable law, as to [Rodgers’s] count asking the Court for a declaratory judgment, the Court finds that the decision of the Saraland City Council in denying [Rodgers’s] zoning change was valid and lawful and was not arbitrarily [sic] or capricious.”
Rodgers appealed to the Court of Civil Appeals, which affirmed the trial court’s judgment without an opinion, citing in its no-opinion affirmance Pollard v. Unus Props., LLC, 902 So.2d 18, 24-25 (Ala. 2004); American Petroleum Equip. & Constr., Inc. v. Fancher, 708 So.2d 129, 132 (Ala.1997); BP Oil Co. v. Jefferson County, 571 So.2d 1026, 1028-29 (Ala.1990); and City of Birmingham v. Morris, 396 So.2d 53, 55 (Ala.1981). Rodgers then petitioned this Court for certiorari review, contending that prior decisions of this Court conflict with the Court of Civil Ap *49 peals’ no-opinion affirmance. We granted certiorari review in this case to consider Rodgers’s contention that the Court of Civil Appeals’ no-opinion affirmance conflicts with Martin v. O’Rear, 423 So.2d 829, 881 (Ala.1982).
II. Standard of Review
“In reviewing a decision of the Court of Civil Appeals on a petition for a writ of certiorari, this Court ‘accords no presumption of correctness to the legal conclusions of the intermediate appellate court. Therefore, we must apply de novo the standard of review that was applicable in the Court of Civil Appeals.’ Ex parte Toyota Motor Corp., 684 So.2d 132, 135 (Ala.1996).”
Ex parte Exxon Mobil Corp., 926 So.2d 303, 308 (Ala.2005).
The standard of review in a zoning case is highly deferential to the municipal governing body. See American Petroleum Equip. & Constr., Inc., 708 So.2d at 132 (“Because the adoption of an ordinance is a legislative function, the courts must apply a highly deferential standard in zoning cases.”).
“ ‘[P]assage of a zoning ordinance is a legislative act, and it is well established that municipal ordinances are presumed to be valid and reasonable, to be within the scope of the powers granted municipalities to adopt such ordinances, and are not to be struck down unless they are clearly arbitrary and unreasonable.’ Cudd v. City of Homewood, 284 Ala. 268, 270, 224 So.2d 625, 627 (1969).”
Pollard, 902 So.2d at 24.
III. Analysis
Rodgers contends that the Court of Civil Appeals’ affirmance of the trial court’s judgment upholding Saraland’s denial of its application for rezoning conflicts with Ma,rtin. According to Rodgers, Martin held that a city’s zoning decision must be based upon professional or expert studies, and here, it says, Saraland’s denial of its application was based solely upon the speculative testimony of several residents. Specifically, Rodgers asserts that in Martin, 423 So.2d at 831, this Court reversed the trial court’s judgment affirming the City of Jasper’s adoption of an amendment to a zoning ordinance because the City of Jasper produced “no documentary studies or expert witnesses to indicate that there was any factual basis” for the fears that the amendment would cause overcrowding and other problems. Rodgers contends that, as was the case with the City of Jasper, Saraland had no factual basis for denying its application for rezoning; therefore, it argues, the Court of Civil Appeals’ decision affirming the trial court’s judgment in favor of Saraland is due to be reversed. Saraland contends that Martin is distinguishable from the present case because in Martin the City of Jasper passed a zoning ordinance to prevent a landowner from building, unlike here, where Rodgers is requesting that its property be rezoned in order to build.
In Martin, Eula Mae Martin purchased a parcel of property in the City of Jasper that was zoned for single-family homes, apartments, and businesses. 423 So.2d at 829. Martin obtained a permit to build a seven-unit condominium complex on the property and began excavating. 423 So.2d at 829. Schley O’Rear and 10 other residents of the City of Jasper (“the O’Rear group”) petitioned the city’s planning commission to rezone Martin’s property to allow only single-family homes and thereby prevent construction of the condominium complex by Martin. 423 So.2d at 829-30. The O’Rear group appeared at a planning commission meeting in support of the petition, and the planning commission recommended that the Board of Commissioners for the City of Jasper rezone the property *50 and surrounding areas to allow only single-family homes. 423 So.2d at 830.
Pending action by the Board of Commissioners on its petition for rezoning, the O’Rear group sought a temporary restraining order (“TRO”), a preliminary injunction, and a permanent injunction to prevent Martin from building her condominium complex. 423 So.2d at 829-30. The trial court issued the TRO, and the Board of Commissioners then adopted an ordinance to rezone Martin’s property and the surrounding area to allow only single-family homes. 423 So.2d at 830. Based on the Board’s adoption of the rezoning ordinance, the trial court issued a preliminary injunction preventing Martin from proceeding with the construction of her condominium complex. 423 So.2d at 830.
After a hearing on the permanent injunction, the trial court enjoined Martin from building the condominium complex. 423 So.2d at 830. Martin then appealed the trial court’s judgment to this Court. 423 So.2d at 829. This Court reversed the judgment of trial court and remanded, stating:
“It is clear from this evidence that the new classification is not consistent with the land use pattern of the area. The attempts by the plaintiffs to show a substantial relationship of the zoning amendment to public health, safety, morals and general welfare amounted to speculative testimony by the plaintiffs that a seven-unit complex might cause traffic problems or parking problems, and general overcrowding of an old, quiet neighborhood. The plaintiffs introduced no documentary studies or expert witnesses to indicate that there was any factual basis to these fears.”
Martin, 423 So.2d at 831.
Our review of the record in Martin shows that the following individuals testified at the hearing on the permanent injunction: the mayor, the chairman of the planning commission, one member of the Board of Commissioners, the city engineer, the city building inspector, four members of the O’Rear group, and Martin.
Hal Coons, the chairman of the planning commission, testified about the circumstances that led to the planning commission’s recommendation that the Board of Commissioners rezone Martin’s property and surrounding areas. Coons testified that before the planning commission’s consideration of the O’Rear group’s petition for rezoning, O’Rear came to him to discuss Martin’s property. The record reflects the following exchange occurred between Coons and defense counsel:
“[DEFENSE COUNSEL]: And did Mr. O’Rear tell you what his group planned to do or the intentions of his group? Well, let me ask you this — what did he tell you on that occasion?
“[COONS]: Well, I went with Mr. O’Rear up to look at this area, and we did discuss the fact that there might be some blight beginning to creep into this old established neighborhood.
[[Image here]]
“[DEFENSE COUNSEL]: Did Mr. O’Rear voice to you some concern about blacks coming into the neighborhood? “[COONS]: Yes, I think he did.
[[Image here]]
“[DEFENSE COUNSEL]: Did the question of a black buying one of these proposed condominium units come up in this discussion?
“[COONS]: I believe we discussed that.
[[Image here]]
“[DEFENSE COUNSEL]: ... [A]t the planning commission did anyone purport to have made a study of what effect the rezoning would have or was there any discussion along those lines?
*51 “[COONS]: Well, we generally discuss it. In this case I’ll say maybe not enough, but we did.
[[Image here]]
“[DEFENSE COUNSEL]: Why did you tender your resignation as chairman of the planning commission?
[[Image here]]
“[COONS]: I felt that we had committed — we had done a bad thing after it came to light that Mrs. Martin would not be able to build her proposed building on the lot, because at the time we made the ruling-—
[[Image here]]
“[DEFENSE COUNSEL]: Do you have a judgment as to the effect of the rezoning upon the safety of the citizens of Jasper in this East Jasper community?
“[COONS]: I wouldn’t think that it would be — it would not hurt the safety of it.
“[DEFENSE COUNSEL]: You don’t feel that it would affect it one way or the other?
“[COONS]: I don’t.
“[DEFENSE COUNSEL]: It would have no effect one way or the other?
“[COONS]: In my opinion.
“[DEFENSE COUNSEL]: As a matter of fact, Mr. Coons, do you feel that the rezoning would affect the public health one way or the other?
“[COONS]: In my opinion it would not affect it.
“[DEFENSE COUNSEL]: Do you feel that it would affect one way or the other the public morals?
“[COONS]: I would think not.
“[DEFENSE COUNSEL]: Wouldn’t affect it one way or the other — things would be just like they were before as afterwards, is that correct?
“[COONS]: That’s correct.
[[Image here]]
“[DEFENSE COUNSEL]: Matter of fact this was done for the benefit of Mr. Schley O’Rear, was it not?
“[COONS]: We did this one by heart instead of by head.
“[DEFENSE COUNSEL]: And your heart is for O’Rear?
“[COONS]: That’s correct.”
Bill Trotter, a member of the Board of Commissioners, then testified about the Board’s adoption of the rezoning ordinance. Trotter was the only member of the Board who testified at the hearing, and the record reflects the following exchange occurred between Trotter and defense counsel:
“[DEFENSE COUNSEL]: What investigation did you make with regard to the area after receipt of the recommendation and before the ... Commission acted on it?
“[TROTTER]: I didn’t make no investigation.
“[DEFENSE COUNSEL]: Did you make any inquiries of anybody about whether the rezoning would help the public safety in the area?
“[TROTTER]: No, sir, the only thing I went by was the zoning board’s request.
“[DEFENSE COUNSEL]: You acted strictly in response to what the recommendations of the planning commission was. Made no further inquiries, had no further judgment about it except that, is that correct?
“[TROTTER]: I had my own feeling about the thing, but other than that; no sir.
“[DEFENSE COUNSEL]: Mr. Trotter, do you have any reason to think that the public health of the City of Jasper would be improved by rezoning of that property from R-4 to R-2?
*52 “[TROTTER]: From my standpoint?
“[DEFENSE COUNSEL]: Yes, sir.
“[TROTTER]: I would presume that if you leave it zoned R-2 I think it would help the neighborhood over there; yes, sir.
“[DEFENSE COUNSEL]: Help the neighborhood?
“[TROTTER]: Well, yes, sir.
“[DEFENSE COUNSEL]: In what respect?
“[TROTTER]: Well, the neighborhood is crowded anyway, it would just add more people to it.
[[Image here]]
“[DEFENSE COUNSEL]: You acted totally in reliance on the recommendation of the planning commission, is that correct?
“[TROTTER]: That’s true.”
After a review of the record in Martin, we conclude that this Court’s reference in Martin to “speculative testimony” of the ill effects of Martin’s condominium complex was grounded in the Board’s adoption of the rezoning ordinance based solely on the planning commission’s recommendation, which, in turn, was based solely on the concern of the O’Rear group that Martin’s condominium complex would be a blight to the neighborhood and would enhance the probability that African-Americans would move into the area. The reference in Martin to the lack of “documentary studies or expert witnesses to indicate that there was any factual basis to these fears” is completely understandable in the context of the record in Martin reflecting that the zoning decision was based solely on speculation.
The facts of this case are distinguishable from those in Martin. In the present case, Saraland presented evidence indicating that its decision to deny Rodgers’s application for rezoning was not based solely on speculation. City councilman Howard Ru-benstein and planning commission member Barbara Scarbrough both testified that the decisions they made regarding Rodgers’s application for rezoning were based on personal knowledge of the traffic congestion in the area and concerns that rezoning the property to allow smaller lots and more residential units would enhance the traffic problems. The record reflects the following exchange between Rubenstein and plaintiffs counsel:
“[PLAINTIFF’S COUNSEL]: You didn’t rely on any expert studies or reports in voting regarding traffic or drainage when you voted [to deny Rodgers’s application for rehearing]?
“[RUBENSTEIN]: I primarily relied on my experience as a resident of Sara-land. I drive this area twice a day, sometimes four or six times a day. I’ve experienced firsthand the traffic problems this particular area has. This area has been a frequent area of complaint over the last four years from residents because of the congestion. And those were some of the factors that as an elected official I relied on in making my judgment.
[[Image here]]
“[PLAINTIFF’S COUNSEL]: And do you have any evidence that eight homes is going to create an impact on traffic or drainage?
“[RUBENSTEIN]: In my opinion as an elected official I think it would have an adverse effect on traffic and congestion.
“[PLAINTIFF’S COUNSEL]: And that’s based solely on your personal knowledge of the area?
“[RUBENSTEIN]: Yes, ma’am.”
The record reflects the following exchange between Scarbrough and defense counsel:
*53 “[DEFENSE COUNSEL]: Why did you vote against [the application for rezoning]?
“[SCARBROUGH]: I had questions about the traffic flow, the ingress into the property, how the streets were developed, how the traffic was going to flow. And also I live on Alvarez Drive, the street that would come out, so I was concerned about the traffic.
“[DEFENSE COUNSEL]: How long have you lived in that area?
“[SCARBROUGH]: Thirty-five years.”
Rodgers relies on the testimony of Marvin Adams, the city councilman who also served on the planning commission, who testified that he had only as much of a “clue” of what impact the rezoning would have on traffic as defense counsel might have. However, we conclude that the testimony of Rubenstein and Scarbrough constitute an independent and adequate basis for concluding that Saraland’s decision was not based solely on speculation. Thus, this case is distinguishable from Martin. For the foregoing reasons, we conclude that Saraland’s denial of Rodgers’s application for rezoning was not arbitrary and capricious.
IV. Conclusion
Finding no conflict with Martin, we affirm the judgment of the Court of Civil Appeals.
AFFIRMED.
COBB, C.J., and STUART, BOLIN, and MURDOCK, JJ., concur.